THE MERCHANTS' SAVINGS, LOAN & TRUST COMPANY

*v.*

GRANT GOODRICH, for use, etc.

1. REPLEVIN—*judgment as to damages.* In replevin against a mere stakeholder for two certified checks, each calling for $2,500, there being in the declaration a count in trover for the conversion of the same checks, where the record showed that the plaintiff obtained the checks by this writ, it was *held* that a judgment in favor of the plaintiff for the property replevied, and for $6,275 damages, could not be sustained, but was clearly erroneous.

2. MEASURE OF DAMAGE — *detention of property in replevin.* In replevin for the wrongful detention of bank checks, where the checks are recovered and delivered to the plaintiff, the plaintiff can only recover, as damages for the wrongful detention, interest on the amount of the checks from the time of the demand and refusal until they are replevied.

3. WAGERS. At common law all wagers are not void. It is only such as are contrary to public policy that are void, as on the question of war and peace, on the event of an election, etc. If the wager is contrary to public policy, or immoral, or in any other respect tends to the public detriment, no action will lie upon it.

4. Same — *contract tainted with.* A contract for the sale of land depending upon the result of an election, on the question of a park in the locality, in a certain way, as a condition precedent to its taking effect, such result being an essential part of the consideration, is void, upon grounds of public policy.

5. Where the purchasers of land deposited with a stakeholder their checks for $5,000 in favor of the vendor's agent, the parties signing an agreement that the checks should be delivered to the payee in case a vote to be taken on that day in West Chicago should be in favor of what was known as the West Side Park Bill, but in case the majority of the votes should be cast against said bill, then the checks were to be delivered to the drawers: *Held,* that the transaction, standing by itself, without reference to the contract of sale, was a wager upon the result of a public election, and one lacking equality, the risk being all on one side, and was void, and that the payee could not maintain replevin for the checks against the stakeholder.

6. Wager — *defined.* A wager is a contract by which two or more parties agree that a certain sum of money or other thing shall be paid or delivered to one of them on the happening of an uncertain event.

Appeal from the Superior Court of Cook county; the Hon. Theodore D. Murphy, Judge, presiding.

This was replevin in the *detinet,* brought by appellee against appellant, in the Superior Court of Cook county. The declaration contains one count in replevin for two certified checks for the payment of $2,500 each, and of the value of $5,000; also a count in trover for similar checks. There was no plea of *non detinet,* but simply a plea of not guilty to both counts. Upon trial on that plea, the jury returned a verdict as follows: " We, the jury, find the defendant guilty, and that the property replevied in said cause, and the right to the possession of the same, is in the plaintiff; and we assess the plaintiff's damages herein against the defendant to the sum of $6,275." Appellant's counsel moved to have the verdict set aside and for new trial, on the ground, amongst others, that the verdict was against the law and the evidence. The court overruled the motion, and entered judgment that " The plaintiff do have and retain the property replevied in said cause by virtue of the writ of replevin issued herein, and also that the said plaintiff do have and recover

of and from the defendant his said damages of $6,225 in form, as aforesaid, by the jury assessed, etc."

There is no writ of replevin or return of the sheriff contained in the record.

The checks in controversy came into the custody of appellant, who was a mere stakeholder, under the following circumstances : Marvin & Kent being the owners of certain land in the town of Jefferson, Cook county, which, it was supposed, would be enhanced in value by the location of a park in West Chicago, under what was known as the West Side Park bill, upon which a vote of the electors was about to be taken, on the 19th of March, 1869, entered into a contract with Welles & Shepard for the sale of that land, as follows :

"We, the undersigned, Richard P. Marvin and Alonzo Kent, agree to sell to H. M. Shepard and F. L. Welles the W. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of section 35, in township No. 40 north, of range 13 east, for and at the rate of eight hundred ($800) dollars per acre, subject to the provisions in the deeds to them, said vendors, in relation to a street through the same, upon condition that a majority of the votes cast in relation to the bill or act, known as the West Side Park bill, shall be cast in favor of the same, at the time appointed for taking the same, on Tuesday next, and not otherwise ; and in case said vote shall be in favor of said bill, and said Shepard & Welles shall, within sixty days after said vote, pay to said Marvin & Kent one-third of the purchase money (said five thousand dollars to be a part of the same), and give their notes, secured by mortgage, with power of sale, for the balance of the purchase money, in three equal installments, with 7 per cent interest, payable annually, said Marvin & Kent will convey said premises to Shepard & Welles, by good and sufficient warranty deed; said five thousand dollars to be deposited in the Third National Bank of Chicago, to be paid to said Marvin & Kent so soon as said vote shall be declared to be in favor of said Park bill.

"An abstract of title to said land shall be furnished, and

title be good, and as soon as said warranty deed is furnished by said Marvin & Kent, ready for delivery at the office of Grant Goodrich, at Chicago, interest is to commence running on said purchase money, in case said vote shall be in favor of said Park bill.

" And in case said vote shall be in favor of said Park bill, and said Shepard & Welles shall not accept said deed of said land as aforesaid, and give their notes and mortgage as above mentioned, then said Shepard & Welles shall, as liquidated damages, forfeit to said Marvin & Kent said five thousand dollars so deposited as aforesaid, which shall immediately become subject to their order.

" In case said Park bill shall be defeated, then said five thousand dollars shall be paid back to Shepard & Welles.

" The parties aforesaid agree to keep and perform the stipulations, and make the sale and purchase of said land on the terms above specified.

" In witness whereof, said parties have hereunto set their hands, this nineteenth day of March, A. D. eighteen hundred and sixty-nine.

"RICHARD P. MARVIN,

" ALONZO KENT,

" FRED. L. WELLES,

" H. M. SHEPARD."

By verbal arrangement, the bank of appellant was substituted in place of the Third National Bank, as the custodian of the $5,000 to be put up, and the separate certified checks of Welles & Shepard for $2,500 each were to be deposited instead of cash.    Accordingly, checks were drawn and certified, and Welles gave his check to Shepard, who was to complete the deposit.    The checks were payable to the order of appellee, who acted as agent for the vendors.    The checks were inclosed in an envelope, on the back of which was written the following :

" The within certified checks are deposited with this com-

pany, and are to be delivered to Grant Goodrich, in case the vote to-day to be taken in West Chicago shall be in favor of what is known as the West Side Park bill. But in case a majority of votes shall be cast against the said bill, the said checks are to be delivered to H. M. Shepard and F. L. Welles. March 23, 1869.

(Signed)            "GRANT GOODRICH,
                   "H. M. SHEPARD,
                   "F. L. WELLES, per
                   "H. M. SHEPARD."

The vote was taken in West Chicago, resulting in a majority of 519 votes in favor of the bill, which was ascertained and certified by the county clerk, as provided in the act. Upon this, Goodrich demanded the checks of appellant, but the latter, having been instructed by Shepard & Welles not to deliver them up, refused to do so, whereupon Goodrich brought this suit and replevied the checks.

The questions presented by the record are : (1) Whether there is any evidence to sustain the verdict as to damages ; (2) the appellant not being a party to the memorandum of terms on back of envelope, whether the court erred in holding those terms conclusive, and excluding parol evidence offered to show that the only terms on which the deposit was received by the bank, was that it should be re-delivered upon the joint order of the depositors ; (3) whether questions arising upon the original contract between the vendors and vendees were involved in this suit ; (4) whether that contract was not void upon grounds of public policy.

Messrs. FULLER & SMITH, for the appellants.

Mr. CYRUS BENTLEY, for the appellee.

Mr. JUSTICE McALLISTER delivered the opinion of the Court :

There is no writ contained in the record ; but the declaration contains two counts — one in replevin in the *detinet*, the other

in trover. The only subject matter of the action was two certified checks, dated March 22, 1869, for the payment each of the sum of $2,500. The verdict was informal, but in substance, upon the count in replevin, finding the property replevied to be the property of the plaintiff, and assessing plaintiff's damages at the sum of $6,275. The court below, overruling a motion by defendant to set the verdict aside and grant a new trial, and failing to have it reduced to proper form, in the presence of the jury, at the July term, 1873, gave judgment upon the verdict upon the count in replevin, that " the plaintiff do have and retain the property replevied in said cause, by virtue of the writ of replevin issued herein, and also that plaintiff do have and recover of and from the defendant his damages of $6,275, in form as aforesaid assessed," etc. The defendant appealed to this court. The bill of exceptions purports to contain all the evidence.

The record is conclusive upon the question that the checks were replevied out of defendant's hands ; and, while there is no evidence upon the question of damages, and the only damages which plaintiff could, in any event, recover for the wrongful detention of the checks would be interest on $5,000, at the rate of six per cent per annum from the time of the demand and refusal until they were replevied by plaintiff, which, although left uncertain by the record, must have been less than two years, still, as the record shows, the plaintiff not only obtained the checks by his writ of replevin, but has recovered a judgment against appellant, a mere stakeholder as to the checks, in a sum exceeding $6,000 as damages. It is unnecessary to even say that this is erroneous. The judgment could not be changed so as to alter its legal effect, without alteration in matter of substance. Such correction, by the settled law of this State, could not be done by the same court, at a subsequent term.

There is, however, another objection taken to the recovery, which, if well taken, goes to the very foundation of the action.

It is, that the transaction is void, as being against public policy. All wagers are not void at common law. It is only those that are contrary to public policy; as, on the question of war and peace, *on the event of an election*, etc.; Metcalf on Contracts, 238, and cases in notes; Chitty on Contracts (10th Am. Ed.), 544. The author last referred to says: "But, at common law, an action could not be maintained on a wager, if it was contrary to public policy, or immoral, or in any other respect tended to the detriment of the public." The same reasons, we apprehend, would vitiate any other contract, whether it were strictly a wagering contract or not.

Now, this case arises out of transactions, which, in any view we can give them, present the taint. The case was tried in the court below, against the objections of appellant, upon the theory that the contract of bailment itself was the limit of inquiry, and that the memorandum of contract written upon the envelope was conclusive upon appellant, as to the terms. Concede that to be so, and what was the position of the parties? The appellant was the mere stakeholder of $5,000 belonging to Shepard & Welles, to be delivered to Goodrich only upon the event of an election being decided in a particular way. This is the language: "The within certified checks are deposited with this company (appellant), and are to be delivered to Grant Goodrich, in case the vote to-day to be taken in West Chicago shall be in favor of what is known as the West Side Park bill; but in case the majority of votes shall be cast against said bill, then said checks are to be delivered to H. M. Shepard and F. L. Welles."

This transaction, standing by itself, is a wager, and one lacking the element of equality between the parties. The risk was all on the side of Shepard & Welles. A wager is a contract by which two or more parties agree that a certain sum of money, or other thing, shall be paid or delivered to one of them on the happening of an uncertain event. 2 Bouv. Law Dict. 638. The uncertain event here, upon the happening of

which the checks were to be delivered to Goodrich, was the event of a public election. The contract was, therefore, a wagering contract that was against public policy, and a right of recovery could not be based upon it.

But whether strictly a wagering contract or not, it is void upon grounds of public policy, because the effect is detrimental to public interest. Upon this principle it has been held that a note to become due upon the election of A to a certain office is void, upon grounds of public policy, as much as any formal wager. *Cooper* v. *Brewster*, 1 Minn. 94; *Nudd* v. *Burnett*, 14 Ind. 25.

So, if we go back to the original contract between Marvin & Kent on the one part, and Shepard & Welles upon the other, in part performance of which these checks were put into the hands of appellant, in the place of the Third National Bank, the stakeholder therein mentioned, the same difficulty arises. By its very terms the event of the election in question, in favor of the park bill, is made not only an indispensable condition precedent to the contract becoming operative, but an essential part of the consideration. The plain tendency of such a contract is detrimental to the public, and it is void upon grounds of public policy.

The judgment of the court below is reversed, and the cause remanded.

*Judgment reversed.*