SLEPPY *v.* BANK OF COMMERCE and others.

*Circuit Court, D. Oregon.* February 22, 1882.)

1. DAMAGES FOR THE DETENTION OF CERTIFICATE OF DEPOSIT.

The defendants unlawfully detained a certificate of deposit of the value of $2,000 from the plaintiff. *Held,* that the plaintiff was entitled to recover damages for such detention equal to legal interest on the value of the certificate from the date of the demand therefor and refusal, to the recovery; and this, without any evidence that the plaintiff would have converted said certificate into money and put it to use, other than his right to do so and the defendants' illegal prevention of the exercise of such right.

At Law.

*Edward Bingham,* for plaintiff.

*M. W. Fechheimer,* for Bank of Commerce.

DEADY, J. This action is brought to recover the possession of a certificate of deposit—No. 20,906—issued by the First National Bank of this city, on April 6, 1881, for the sum of $2,000, made returnable to the plaintiff or order, and since indorsed "S. P. Sleppy, G. L. Howard, Chas. H. Lee," and "Pay First National Bank or order for collection account of Bank of Commerce, St. Louis; J. C. Van Blarcom, Cashier," and alleged to be wrongfully detained from the plaintiff by the defendants.

The plaintiff is a citizen of Oregon, and the defendants are not. The action is brought under section 8 of the judiciary act of March 3, 1875, (18 St. 472,) authorizing an action to be maintained in a circuit court of the United States to enforce a claim to personal property within the district where such action is brought, although the defendant therein shall not appear thereto, nor be an inhabitant of such district or found therein.

An order was made requiring the defendants to appear and answer within 60 days from the service on them of a copy thereof. This order was served upon the defendant the Bank of Commerce personally, at St. Louis, it being a corporation formed under the laws of

¹ From 8th Sawyer.

that state and doing business therein, and on the National Bank aforesaid, in whose possession said certificate then was as the agent of the Bank of Commerce; and on the defendants Howard and Lee, who were not found anywhere, by publication.

The complaint has a double aspect, being in trover as well as replevin, and alleges that about May 20, 1881, the defendants "wrongfully converted said certificate to their own use," and still wrongfully "detain" the same from the plaintiff without his consent. But the action has been considered and tried as an action of replevin only, and the allegation as to the "conversion" of the certificate treated as surplusage.

It is also alleged that before the commencement of this action, and while said certificate was in the possession of said National Bank, as aforesaid, the plaintiff duly demanded of said bank, as the agent of said defendants, the possession of said certificate, which was refused.

The answer of the Bank of Commerce admits that the certificate was issued to the plaintiff, as alleged, but denies knowledge or information as to whom it belongs now or since; and alleges that on May 31, 1881, persons claiming to be the Lee and Howard whose names are indorsed on said certificate, deposited the same with it for collection, and that thereafter it forwarded the certificate to the National Bank aforesaid for collection; that about June 10th and 15th said Lee made inquiry of said defendant whether or not said certificate had been collected, and was told that it had not, since which time the defendant had not been able to obtain any information concerning said Lee.

The cause was tried by the court without a jury. Upon the trial it appeared from the testimony of the plaintiff that soon after receiving the certificate of deposit he went to San Antonio, Texas, and after tarrying there a few days, started home by the southern route on a through ticket to San Francisco in an emigrant train; that shortly before reaching St. Louis, a person calling himself E. L. Stevens stepped into the car and asked him where he was going, to which the plaintiff answered, Portland, Oregon; whereupon Stevens said he was going there also and would be glad of his company; that he was going on to Wallawalla, and upon the plaintiff mentioning the names of two well-known citizens there with whom he was acquainted, Stevens said one of them was his uncle. After sitting awhile by the plaintiff, Stevens proposed to give him his address, for which purpose the plaintiff handed him an ordinary pocket memorandum book, which contained this certificate and a ten-dollar bill. After writing the address—"E. L. Stevens, Wallawalla, Washington territory, met on train May 18, 1881 —he returned the book to the plaintiff, and after a short interval asked the plaintiff to write his name and address in his book, which he did. The train arrived at St. Louis about 8 in the evening, and there Stevens said he had some business to attend to, which would prevent his going on until

morning, and asked the plaintiff to wait for him at Kansas City. Before parting with the plaintiff, Stevens took him to a restaurant near by to get his supper, and as he turned away put 25 cents into his hand to pay for it, saying he might be short of change. The plaintiff objected to taking it, but Stevens insisted, and as he went away said he could make it all right when they met on the cars at Kansas City.

The plaintiff waited at the latter place for Stevens until the next evening, but he did not come, and then went on without him. At Los Angeles he made some purchases, and finding himself short of pocket money, took out his memorandum book, intending to get the ten-dollar bill changed, when he ascertained that both it and the certificate of deposit were missing. As the train was then starting, he had not time to telegraph, but at the next station,—Mojave,—on June 7th, he telegraphed to the National Bank to stop payment of the certificate. The name of the plaintiff as indorsed on the certificate was admitted by him to be a good imitation of his signature.

It was also admitted by counsel for defendant that the plaintiff demanded possession of the certificate as alleged, and that the National Bank, acting under the instruction of the defendant "to neither deliver the certificate to the plaintiff nor pay him any money on it," refused to surrender it, and still retains the possession of the same.

The evidence is satisfactory that the *chevalier d'industrie*, calling himself "Stevens," of Wallawalla, abstracted the certificate from the plaintiff's memorandum book when he got possession of it on the train, under pretense of writing his address therein. The giving him 25 cents to pay for his supper was a precaution against the plaintiff's having to resort to the ten-dollar bill for that purpose, and thus becoming aware of the theft before he left St. Louis. The subsequent indorsements upon the certificate of the names of the plaintiff, Howard, and Lee, and the deposit of the same with the Bank of Commerce for collection, are probably the work of the same party or some confederates, who have wisely kept in the background since they learned that the owner was asserting his claim to the possession of the property.

It is practically admitted that the plaintiff is entitled to recover the possession of the certificate, but the claim of damages for its detention is earnestly resisted, upon the ground that the detention has worked no injury to the plaintiff, for the reason that the certificate is not money, and there could be no profit in the mere possession of it; that although the plaintiff might have converted it into money and put the latter to profitable use, there is no evidence in the case that he would have done so. But so long as the National Bank is solvent the certificate is the exact equivalent of $2,000, and could be actually converted into that sum at the pleasure of the plaintiff. Practically it is money, and its detention has deprived the plaintiff of the use of that sum.

Nor is it necessary to prove that the plaintiff would have converted it into money and put it to use. It is sufficient that he had the *right* to do so; that he might have done so but for the unlawful detention of the certificate by the defendant.

When the use of property unjustly detained is valuable, the value of such use is generally adopted as the rule of damages. For instance, when work-cattle or horses are detained from the owner, who is thereby deprived of their use, the value of that use will ordinarily be the just compensation for their detention. Wells, Replevin, § 579, and cases there cited. But no proof is necessary to show that the owner would have used his horses or cattle during the time of their detention. His right to have done so is sufficient. And where the wrong consists merely in the detention of property, not the subject of daily use, without waste or depreciation, interest upon its value is often allowed as damages for the detention. Id. § 537, and cases there cited.

*Merchants' S., etc., Co.* v. *Goodrich,* 75 Ill. 554, was an action to recover two certified checks of $2,500 each. The verdict was for the plaintiff, and, in addition to the checks, gave him $6,275 damages for their detention, and $1,275 interest, besides the value of the checks. Judgment was rendered on the verdict, but on appeal to the supreme court the judgment was reversed, because it gave the plaintiff the checks, and also their value and interest thereon as damages. But in the course of the opinion of the court it is said:

"While there is no evidence upon the question of damages, the only damages which plaintiff could, in any event, recover for the wrongful detention of the checks, would be interest on five thousand dollars at the rate of six per centum per annum from the time of the demand and refusal until they were replevied by the plaintiff."

And this is equivalent to saying that such interest might be recovered as damages for the detention of certified checks, which in legal effect and contemplation are the same as this certificate of deposit.

The pleadings and evidence are silent as to the date of the demand and refusal, except that it was prior to the commencement of the action, which was on June 27, 1881.

Interest will be allowed on the value of the certificate, as damages for its detention, at the rate of 8 per centum per annum from that date—in even numbers for eight months.

The finding of the court will be that the certificate is the property of the plaintiff and of the value of $2,000, and that he is entitled to the possession of the same and $106.66⅔ damages for its detention, and that he have judgment against the defendants for the delivery of said certificate, or the recovery of the value thereof, and the damages aforesaid and costs.