## Erdman's Administrator v. Erdman's Executor and Trustee.

(Decided February 15, 1929.)

(As Modified, on Denial of Rehearing, May 24, 1929.)

MORTON K. YONTS and GARDNER K. BYERS for appellant.

PETER, LEE, TABB & KRIEGER for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

This suit involves the construction of a clause of the will of Charles W. Erdman who died in October, 1917. He left his estate to his widow, Clara B. Erdman, two sons, Charles T. Erdman and John O. Erdman, and a daughter, Mrs. Betty B. Burks. Charles T. Erdman died testate December 9, 1918. · He left his estate to his widow, Sarah B. Erdman, now Sarah B. Masters, and William A. Rosenfield qualified as his administrator with the will annexed. The Louisville Trust Company qualified as executor and trustee under the will of Charles W. Erdman, and, after the death of Clara B. Erdman in January, 1920, it brought an action for the construction of a clause of the will with reference to a fund of $2,500 which the trustee was directed to pay to Charles T. Erdman at the death of his mother, who was to receive the income during her life. The lower court adjudged that Charles T. Erdman took under his father's will a vested estate in the $2,500 fund. The judgment of the lower court was affirmed by this court in Erdman v. Masters, 208 Ky. 361, 270 S. W. 758. Upon the return of the case to the lower court, the Louisville Trust

Company, as executor and trustee, filed an amended petition in which it asked judgment against William A. Rosenfield, administrator with the will annexed of Charles T. Erdman, for the sum of $2,000, with interest which was advanced to Charles T. Erdman under a clause of the will of his father which reads as follows:

"My trustee is authorized to advance to each of my sons the sum of $2,000 for the purpose of making further improvements to the real estate mentioned in this clause. In the event, however, that such sum or sums are advanced, the son or sons receiving the same shall be charged interest at the rate of 4 per cent. per annum."

The trust company alleged in its amended petition that, after the death of Charles W. Erdman, his son, Charles T. Erdman, secured from it $2,000, and executed to it his note for this amount, the same to bear interest at the rate of 4 per cent. per annum, as provided for in his father's will. It was provided in the note that, to secure its payment, the trust company should have a lien upon any funds in its hand belonging to Charles T. Erdman, and it asked that this lien be enforced against the fund of $2,500 which the court had adjudged belonged to the estate of Charles T. Erdman.

The learned chancellor, in a well-considered opinion, held that the trust company was entitled to judgment on the $2,000 note with 4 per cent. interest, but denied its claim to a lien against the fund of $2,500. The administrator of Charles T. Erdman has appealed, and the trust company, as executor and trustee, has taken a cross-appeal from so much of the judgment as denied it a lien against the $2,500 fund. We have examined the will and concur in the chancellor's construction thereof.

It is insisted by the appellant that the provision of Charles W. Erdman's will, providing for an advancement of $2,000, never contemplated the repayment of this sum, and that in reality it was an advancement and not a loan which could be charged against the maker of the note. We can add nothing to the force and cogency of the chancellor's argument in answering this contention, and we accordingly adopt the following por-

tion of the chancellor's opinion as the opinion of this court:

"The administrator says that testator meant to make this gift to each of his sons in order to complete and perfect the gift of a place of residence and that the requirement that interest should be charged was intended merely to prevent any impairment of the income from his entire personal estate, which was directed to be paid to his widow during her life.

"In determining what was testator's intention, I am not sure that the use of the word 'advance' helps us very much, since that word is used in so many senses. It means to supply beforehand, to furnish on credit, to pay money before it is due, to prepay on account of an anticipated debt, to supply money or its equivalent to be thereafter returned, etc., etc. The word, however, when used as it is used here, does undoubtedly suggest the idea of an arrangement for allowing a legatee to enjoy presently a portion of something which is destined for his future enjoyment. It is not a word which a man would naturally use in describing an absolute gift, for which no accounting whatever was to be required.

"And the impression is strengthened by a consideration of the doctrine of 'advancements.' That doctrine is a part of the law, not of wills, but of descent and distribution. Its principle is equality. In case of intestacy, the children of the dead man are to share equally in his property, not merely in what remains at his death, but in all that came from him, so that a child must bring into hotchpot what he received before his parent's death before he will be allowed to share in the distribution of his estate.

"In the law of descent and distribution, an advancement is a present gift of money or property, made by parent to child (by our statute extended to other relationships) to enable the donee to anticipate his inheritances to the extent of the gift; or, 'An irrevocable gift by a parent in his lifetime to his child on account of such child's share of the estate after the parent is dead.' Schweitzer v. Schweitzer, 82 S. W. 625, 26 Ky. Law Rep. 888.

"It is axiomatic that in the law of wills the intention of the testator is everything. And, since, a will, whenever made, speaks as of the time of testator's death, at which time he must be presumed to have in view all earlier bounties to those named in his will, the presumption is that he intends to extinguish all of them all that he does not save by some provision of his will. Duncan's Trustee v. Clay, 13 Bush, 48.

"But, although the doctrine of advancements is part of the law of intestate succession, it is not infrequently imported into a will and when we find a testator making arrangements and using expressions which are associated with that doctrine, it may be necessary to infer its adoption. And certainly to direct that money be 'advanced' is to suggest very strongly that an 'advancement' for which there is to be an accounting, is intended.

"In the present case, Charles W. Erdman disposed by will of his entire estate; at least, there is nothing in the record to the contrary. After devising a place of residence to his son, John, and authorizing the advancements of $2,000.00 each to John and Charles, after making other devises not necessary to be mentioned here, and after reciting that he had theretofore made gifts to his daughter which would make it unfair to leave her more than a remainder in one-third of the residue, he gave the residue of his estate to his executor, as trustee, with direction to pay the net income (or as much thereof as she desired) to his wife during her life and, upon her death, to pay $2,500 to each of his sons, John and Charles, to set aside a trust fund for each of them of $30,000.00 and then to divide the residue equally between his three children, naming them.

"The value of the Erdman estate is not shown by the record, but the will suggests that it was large and counsel for the administrator says in his brief that Mrs. Burks (testator's daughter, who was given one-third of the residue) has received 'enormous sums in real and personal property.'

"I think it is plain enough that the testator, in authorizing his trustee to advance $2,000.00 to his son, did not anticipate that the latter should ever be required to repay that sum to the trustee out of his own means. It was not a debt, I think. But it does

not necessarily follow that he did not intend that it should be paid out of the son's share of the estate, when he should come into the enjoyment of it. The requirement that interest should be charged suggests that he did intend this. I am not impressed with the argument that the requirement of interest was intended merely to provide income for the life tenant. Interest at four per cent, as required, would produce $80.00 a year (or $160.00, if both advancements were made) and this sum cannot have been considered a material addition to the income from so large an estate as this. The testator himself, as his will shows, had in mind that the net income would probably be more than his widow would need.

"In addition to the requirement of interest, there is another indication that the testator did not intend to make an outright gift to his sons, in addition to the other provision made for them. It is that such a construction would (or might) disturb that equality between them which he obviously intended. Let us suppose that one of the sons had demanded and received his $2,000.00 for the improvement of his residence, but that the other had sold his residence without making the improvement. If the latter had thereafter demanded that the trustee advance him $2,000.00 the trustee would very properly have declined to comply upon the ground that the money could no longer be used for the purpose for which alone it was authorized to advance it. In that event, if the advancement to the first son were not charged upon his share of the estate, he would be $2,000.00 ahead of his brother in the end.

"Furthermore, if these advancements were not to be charged against the sons, there could be no doubt that both of them would demand them, since not to do so would be to lose the gift irrevocably. With this certainty before him, the testator would hardly have visualized, as he did, the possibility that his sons, or one of them, might not demand his advancement.

"I conclude, therefore, that it was the testator's intention that the advancement made by the trustee to Charles should be charged against the latter's share of the estate, into which he was to come upon his mother's death. And while he doubtless expected that Charles would outlive his mother and would

therefore come into the large property which he was destined to receive in that event, yet he made no distinction between that event and the contingency of Charles' death before his mother and I can make none for him.''

It appears that the note had been stamped ''paid,'' and some point is made of this, but it is conceded that nothing was actually paid on the note, and it is satisfactorily shown that the notation referred to was made by an employee of the trust company through mistake. Even though the trustee construed the clause of the will as making a bequest and not as authorizing a loan and for this reason stamped the note ''paid,'' its construction would not be conclusive and binding, if erroneous.

The appellee on its cross-appeal insists that the lower court erred in denying it a lien on the $2,500 fund that had been adjudged to belong to the estate of Charles T. Erdman. Appellee allowed judgment to go against it as to the $2,500 fund without setting up a claim on the note, and the chancellor correctly held that, having allowed judgment to go against it without asserting its claim, it cannot hold up the execution of that judgment merely by commencing an action on the note.

Wherefore the judgment is affirmed both on the original and cross appeals.