[Civil No. 4589. Filed January 4, 1944.]

[144 Pac. (2d) 688.]

WASHINGTON NATIONAL INSURANCE COM-
PANY, a Corporation, Appellant, v. EMPLOY-
MENT SECURITY COMMISSION OF ARI-
ZONA, Appellee.

Messrs. Ellinwood & Ross, Mr. Joseph S. Jenckes, Jr., and Mr. George E. Wood, for Appellant.

Mr. Arthur M. Davis, for Appellee.

UDALL, Superior Judge.—The question presented on this appeal is whether the Washington National Insurance Company, a corporation, appellant herein, is liable for payment of contributions to the Arizona Unemployment Compensation Fund on the remuneration paid to salesmen for the Company.

. The appellee, Employment Security Commission of Arizona, hereinafter referred to as the Commission,

on March 7, 1942, gave notice to the appellant, who will hereinafter be referred to as the Company, of an administrative hearing before the Commission to determine whether the Company is an "employer" within the meaning of the Employment Security Act of 1941. Code 1939, § 56-1001 *et seq.* The hearing was had and thereafter the Commission entered its findings of fact, conclusions of law and decision, holding that the "collection activities" of the Company's salesmen do not constitute "services performed by an individual for a person as an insurance agent or as an insurance solicitor" but that services performed by the Company's salesmen in the solicitation of contracts for insurance do constitute "services performed by an individual for a person as an insurance agent or as an insurance solicitor."

From this determination the Company, pursuant to Section 56-1001(b) (2), Arizona Code Annotated 1939, appealed to the Superior Court of the State of Arizona, in and for the County of Maricopa, where a trial *de novo* was had and the lower Court entered its judgment sustaining the Commission in all respects, from which judgment this appeal was taken.

The Company is engaged in writing life, health and accident insurance in the State of Arizona. A substantial portion of the insurance written by it provides for the payment of premiums on a weekly basis. This is commonly referred to as "industrial insurance." The Company employs some thirty-seven agents in the State of Arizona, each of whom is assigned to a "debit." A "debit" is the aggregate of the premiums becoming due weekly on all industrial insurance policies held by persons residing in a certain district or territory. The term is also used as descriptive of such district or territory. The agents and solicitors employed by the Company

perform the usual and customary duties incident to such type of work, namely: Solicit applications for insurance, collect premiums (which latter activity occupies for each agent some three days of every week), arrange for change of beneficiaries, assist policy holders in making sick or death claims and otherwise generally service the business in their respective debits.

The Legislature, in passing the Employment Security Act of 1941, made this specific exemption:

"The term 'employment' shall not include: . . . service performed by an individual for a person as an insurance agent or as an insurance solicitor, if all such service performed by such individual for such person is performed for remuneration solely by way of commission." Section 56–1002(i) (6) (H) (viii), Arizona Code Annotated 1939, as amended.

The Federal Act and most of the State unemployment compensation acts originally contained no provisions exempting insurance agents. The Congress in 1940 amended the Federal Law, 26 U. S. C. A. Int. Rev. Code, § 1607(c) (14), and included the exemption of insurance agents in the same language as the Arizona law above quoted.

The Commission, by proper cross assignment of error, is attacking the constitutionality of Section 56–1002(i) (6) (H) (viii), *supra,* on the ground that it seeks to exempt from said statute one group of individuals compensated by way of commission, while not extending the same exemption to all individuals compensated by way of commission who are similarly situated under the act, which it says is violative of Art. 2, Section 13 of the Arizona Constitution, which states:

"No law shall be enacted granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms,

shall not equally belong to all citizens or corporations."

 This assignment deserves first consideration, for if it were sustained it would be determinative of the whole case and there would be no need to consider any of the other assignments of error. The Commission admits that this point is here raised with reluctance, as it was not presented in the lower Court, and the trial judge there had no opportunity to pass upon the same. As was pointed out by us in the case of *Town of South Tucson* v. *Board of Sup'rs*, 52 Ariz. 575, 84 Pac. (2d) 581, 584, upon which the Commission now chiefly relies:

"As a general proposition an appellate court will not consider a question not first raised in the lower court, but this is merely a matter of procedure, and not a matter of jurisdiction. . . . The reason for the rule is plain. If the question had been raised below, the situation might have been met by the opposite party by way of amendment or of additional proof. In such circumstances, therefore, for the appellate court to take up and decide on an incomplete record question raised before it for the first time would, in many instances at least result in great injustice, and for that reason appellate courts ordinarily decline to review questions raised for the first time in the appellate court."

It is true that in that case we exercised our discretion and went ahead and determined the constitutional question for these reasons, viz.:

"[The matter] is one of substantive law *which is not affected by any dispute as to the facts of the case,* . . . is one of considerable importance to the state, as a matter of public policy. . . . [that the] failure of the plaintiff to raise the issue in the lower court [does not] in the slightest degree hamper defendants in presenting it fully before this tribunal."

■ We do not think this case falls within the exception to the general rule as applied in the *South Tucson* case, *supra,* because any determination by this court as to the power of the legislature to place insurance agents, as does the Federal Law, in a separate class with respect to the operation of the Employment Security Act would necessarily require an examination of the facts distinguishing such group from others subject to the act. Proper respect to the Legislature, a coordinate branch of the government, and to the rights of the appellant, impels us to grant the proponents of the law an opportunity to adduce evidence in justification thereof. Furthermore, we do not consider this matter one of such broad, general, state-wide concern as to warrant a departure from the general rule. Ordinarily the Commission should seek to sustain the law, but here we have the anomalous situation of it asking to have declared unconstitutional a part of the law under which it was created and is operating. We express no opinion on the merits of the assignment, but for the reasons stated decline to determine the constitutional question on this appeal.

The Company challenges that portion of the lower court's findings of fact, conclusion of law and judgment sustaining the Commission's ruling which holds that the individuals in question are engaged in two types of service for the Company: (a) The collection of premiums from their "debits" on the so called "industrial insurance," (b) the soliciting of contracts of insurance on behalf of the Company. For the reason that the uncontradicted evidence discloses that all activities and services of the appellant's agents are performed for it as insurance agents or as insurance solicitors for remuneration solely by way of commission and that therefore under the provisions of the exemption statute the

Company is not an "employer" of such agents within the meaning of the Employment Security Act of 1941 and is not liable for contributions with respect to any portion of the sums paid to said agents as compensation for their services. The lower court held that the activities under (b) were exempt from the provisions of the law, but that that portion of the individuals' time occupied in the "collection activities" described under (a) were not so exempt for the reason that while thus engaged they were not performing services as insurance agents or solicitors.

What is the true meaning of the term "insurance agent"? And do all of the activities, both under (a) and (b), *supra,* of the individuals employed by the Company come within the legal meaning of that term as used in our Employment Security Act? At the same session of the Legislature when this act was passed, the Legislature amended the general Insurance Code, Chap. 113, Laws of 1941. Among other things, the term "insurance agent" was defined to mean "a natural person authorized, by and on behalf of an insurer, to transact insurance." The term "transact" was defined to include "solicitation, negotiation preliminary to execution and execution of a contract of insurance, and transaction of matters subsequent to execution of the contract and arising out of it." The term " 'insurance solicitor' or 'solicitor' means a natural person employed by an insurance agent to aid him in transacting insurance other than life."

In view of the fact that we have held that all statutes are to be construed together, *National Surety Company* v. *Conway,* 43 Ariz. 480, 33 Pac. (2d) 276, and that it is a well recognized principle that legislative construction in one act of the meaning of certain words is entitled to consideration in construing the same words appearing in another act, *State* v. *Grange,* 200 Ind. 506, 165 N. E. 239; *Must*

*Hatch Incubator Co.* v. *Patterson,* D. C. 32 Fed. (2d) 714, it seems but reasonable to suppose that it was the intention of the Legislature to give to these terms used in the Employment Security Act the same meaning as accorded to it by the Insurance Code, Chap. 113, *supra.* We shall therefore determine this question by using that yardstick, although in our opinion the same result would be reached if we interpreted the terms under their common and ordinary meaning in accordance with that rule laid down in the case of *Wayland* v. *Kleck,* 57 Ariz. 135, 112 Pac. (2d) 207.

██ Throughout the proceedings, both here and in the lower court and before the Commission, the term "solicitor" is injected; certainly none of the individuals with whose activities we are concerned in this case could be considered as an insurance solicitor. To be such one must be *employed by the insurance agent* to aid him; he is a mere middleman. In the instant case all representatives were *employed directly by the Company.* In the case of *American Casualty Co.* v. *Ricas,* 179 Md. 627, 22 Atl. (2d) 484, 487, the distinction between insurance agents and solicitors is made clear and a good definition of both terms given:

"Authorities everywhere agree that an insurance agent, so far as the insurer is concerned, is a person expressly or impliedly authorized to represent it in dealing with third parties in matters relating to insurance, and an insurance solicitor, or broker, is one who acts as a middle man between the assured and the insurer, and who solicits insurance from the public under no employment from any special company, but having secured an order, either places the insurance with a company selected by the assured, or in the absence of any selection by him, then with a company selected by the broker."

See also 29 Am. Jur., Insurance, Section 86, page 110.

Few courts have had occasion to pass upon the question being considered here, but there were two cases cited by the Company that are quite in point. A Texas appellate court discussed fully the services performed by one Saunders, an industrial insurance agent, and among other things stated: ''Saunders was in common and everyday parlance an 'insurance agent.' '' *American National Ins. Co.* v. *Denke,* 128 Tex. 229, 95 S. W. (2d) 370, 372, 107 A. L. R. 409. And in the case of *Florida Industrial Commission* v. *Peninsular Life Ins. Co.,* 152 Fla. 55, 10 So. (2d) 793, 794, the Supreme Court of Florida pointed out that by amendment of the Florida Social Security Act in 1941, Acts 1941, c. 206.85, F. S. A. § 443.02 *et seq.,* ''the legislature in terms exempted all insurance agents compensated on a commission basis from the provisions of the act.'' The decision of the lower court denying unemployment compensation to an insurance agent was affirmed. Among other things the lower court stated in its opinion:

''As to the opinion of said Industrial Commission attempting to differentiate between employees of industrial insurance companies and insurance companies doing a general life insurance business, it is the opinion of the court that such was not the intention of the Florida Legislature in either of the aforesaid acts, and that any attempt to so construe or administer said act would violate the due process clauses of both the state and federal constitution.''

When one considers the history of the exemption of life insurance agents, paid by commission, as contained in our Act, and other similar acts, it appears clear that there was a legislative intent to exempt industrial insurance agents. Originally the Federal and most of the state unemployment compensation acts contained no provision exempting insurance agents. It was nevertheless contended that

industrial insurance agents, such as those involved here, were exempt as independent contractors. The Courts did not agree. *Superior Life, Health & Accident Insurance Company* v. *Board of Review,* 127 N. J. L. 537, 23 Atl. (2d) 806; *Life & Casualty Ins. Co.* v. *Unemployment Compensation Commission,* 178 Va. 46, 16 S. E. (2d) 357; *Review Board of Unemployment Compensation* v. *Mammoth Life & Accident Ins. Co.,* 111 Ind. App. 660, 42 N. E. (2d) 379.

In 1940 Congress amended the Federal Unemployment Tax Act by including the exemption of insurance agents in the same language later incorporated in the Arizona Employment Security Act of 1941 and in a majority of the other state acts. 26 U. S. C. A. Int. Rev. Code, § 1607(c) (14). In discussing the proposed amendment the late Senator Pat. Harrison stated:

"Several states have exempted insurance salesmen from coverage, and your committee believes that it would be wise to exclude from the Federal Unemployment Tax insurance salesmen whose sole pay is by way of commission. This would, of course, still leave the states free to cover this employment when they choose to do so, but it would eliminate the present situation, where the entire federal tax, without any offset for state unemployment contributions, comes to the federal government where the state exempts this employment. *The principal class of insurance salesmen which would be affected, is that class engaged in what is generally called industrial insurance.*" 84 Cong. Rec.—Sen. 8829.

We are of the opinion that all services performed by appellant's agents are performed as "insurance agents" for the reason that under our statutes these men are constituted "insurance agents" by virtue of such activities. The test is whether or not, in the performance of any service, they are transacting insurance. In making sales of insurance

they are obviously transacting insurance; namely, "solicitation, negotiation preliminary to execution and execution of a contract of insurance." It is equally clear that in collecting premiums and otherwise servicing the policy, these men are transacting insurance; namely, "transaction of matters subsequent to execution of the contract and arising out of it." The lower Court was in error, as a matter of law, in holding that as to the "collection activities" of the Company's representatives that they were not an "insurance agent" within the meaning of that term as used in the Unemployment Compensation Act of 1941. However, it does not follow that merely because they are found to be insurance agents, that of itself relieves the Company from the provisions of the Act, because in addition to being insurance agents the exemption statute expressly provides that such service must be performed for remuneration "solely by way of commission."

How then are the Company's agents compensated for their services? From the record it appears that their activities may be grouped as follows:

(1) All new policies written of ordinary life, health and accident insurance;

(2) "Industrial insurance" business, which includes the collection activities, is covered by (a) "20—20" contract, (b) "merit" contract. It is admitted by both parties that as to (1) the agent is compensated solely by way of commission out of premuims paid, and on a basis separate and apart from (2) (a) or (b). Under the "20—20" contract, (2) (a), *supra*, it is agreed that the method of payment is clear and concise; the agents receive each week, for all services performed by them an amount equal to 20% of the premiums collected, plus 10% of a reserve fund which is built up by multiplying by 20 each dollar of net increase in the "debit."

Now with reference to the so-called "merit contract" referred to as (2) (b), *supra,* both the lower court and the commission held that the Company's agents were compensated solely by way of commission. A cross assignment of error on the part of the Appellee challenges the correctness of this legal conclusion and argues that the Company's agents under this contract are paid a fixed salary each week regardless of the amount of business produced by them, and the formula (merit contract) used is merely a guide to the company to determine what they are worth. The facts are not in dispute. While the parties refer to the minimum weekly stipend as a "commission" we are not bound by this terminology, but must look beyond it to the actual relationship of the parties. *Unemployment Compensation Commission* v. *Harvey,* 179 Va. 202, 18 S. E. (2d) 390, 396.

"Commission" is a word without technical meaning, but, when used to express compensation for services rendered, it usually denotes a percentage on the amount of moneys paid out or received. *Purifoy* v. *Godfrey,* 105 Ala. 142, 16 So. 701, 703.

"Salary" is generally defined as a "fixed annual or periodical payment for services, depending upon the time, and not upon the amount of services rendered." *Benedict* v. *United States,* 176 U. S. 357, 360, 20 Sup. Ct. 458, 459, 44 L. Ed. 503; *King* v. *Western Union Telegraph Co.,* 84 S. C. 73, 65 S. E. 944, 946.

The term "advance" means to supply before hand, to furnish on credit, to pay money before it is due, to prepay on account of anticipated debt, and to supply money or its equivalent to be thereafter returned. *Erdman's Adm'r* v. *Erdman's Ex'r and Trustee,* 229 Ky. 162, 16 S. W. (2d) 756; *Kinney* v. *Hynds,* 7 Wyo. 22, 49 Pac. 403. One of the meanings

of "advance" is a loan and when used in that sense naturally implies a reimbursement, so as to imply relation of debtor and creditor. *Grone* v. *Economic Life Ins. Co.,* Del. Ch., 80 Atl. 809.

██ As is pointed out in *Greer* v. *Hunt County,* Tex. Com. App., 249 S. W. 831, 832:

"The controlling element in determining whether the amount to be received is upon a commission or salary basis is whether that amount, by whatever name it may be called, is absolute and fixed, regardless of what the lawful commissions may be, or is made contingent upon earning that amount as commissions."

Under this merit contract the men are advanced a minimum of $35 per week (formerly $25) against a reserve which is theoretically built up upon the basis of a very involved formula, viz.:

Quarterly Schedule of Collection and Increase Commissions.

Industrial Collection Commissions, 15 per cent of total collections.

Industrial Increase Commission, 25 times on official increase.

Quarterly Schedule of Additional Increase Commissions.

Debit collections year averaging 95% or more 2 additional times.

Debit gross arrears quarter averaging less than 50% 2 additional times.

Debit gross advance quarter averaging 100% or more 2 additional times.

Debit lapse ratio quarter averaging 1% or less 3 additional times.

Plus a lump sum yearly bonus for those remaining in service more than a year, computed on another basis. From this it is apparent that there are many factors, besides strictly commission, that enter

into the determination of their pay. One fatal defect is the fact that the moneys thus advanced weekly by the Company do not constitute a fixed personal liability of such agents, and when they leave the company the "red" balance, if any, owing by the agent is written off as admittedly it does not constitute a loan that can be recovered.

Testing this merit contract by the legal principles heretofore stated, we are of the opinion that the payment of fixed, unvarying sums each week for a thirteen-week period, without respect to amount of insurance sold in each particular week, does not constitute payment by way of commission within the meaning of the statute, particularly when amounts so paid are merely chargeable against possible earnings of the individual so compensated, and repayment to the company does not constitute a fixed, personal liability of such persons. The lower court was in error in holding to the contrary.

One other point should be made clear, it being one of the reasons upon which our conclusion is based, if an agent is compensated partly by a fixed salary and partly by way of commission the Company must pay into the Unemployment Compensation Fund on the aggregate remuneration paid to him; it is only where an agent is compensated "solely by way of commission" that he comes within the exclusion amendment. *Home Beneficial Life Insurance Co.* v. *Unemployment Compensation Commission of Va. et al.,* 181 Va. 811, 27 S. E. (2d) 159.

Even though the basis of the lower court's ruling was erroneous in holding that the Company's representatives under (2) (a) and (b), *supra,* were not "insurance agents" within the meaning of the statute, yet the ultimate conclusion was in part correct, for the reason that under the merit contract the agents were paid a salary and were not remun-

erated "solely by way of commission." We modify the ruling as to the "20—20" contract employees to conform to the views herein expressed, and affirm the judgment as to the "merit contract" employees for the reasons stated, and as so modified the judgment will be affirmed.

ROSS and STANFORD, JJ., concur.

McALISTER, C. J., being ill, the Honorable LEVI S. UDALL, Judge of the Superior Court of Apache County, was called to sit in his stead.