CITY OF NEW ORLEANS v. FISHER et al.[1]

(Circuit Court of Appeals, Fifth Circuit. January 17, 1899.)

No. 747.

1. APPEAL—PRESENTATION OF QUESTIONS TO TRIAL COURT.
Questions involving the correctness of a master's findings, which were not raised by proper exceptions to his report, cannot be made the grounds of assignments of error on appeal.

2. EQUITY—ADEQUATE REMEDY AT LAW.
Where a creditors' bill seeks to reach an amount alleged to be due from a city to its school board, which can only be correctely ascertained by an accounting, there is not an adequate remedy at law, and equity has jurisdiction.

3. ESTOPPEL—GARNISHMENT PROCEEDINGS—EFFECT ON SUBSEQUENT CREDITORS' BILL.
The garnishment of a city treasurer under a judgment against the school board of the city, as to taxes collected by the city for the school district, and the payment and receipt of the sum shown to be due by the garnishee's answer, does not estop the judgment creditor from maintaining a creditors' bill against the city for an accounting with the school district as to such taxes.

4. TAXATION—OWNERSHIP OF INTEREST ON DELINQUENT TAXES.
Interest accruing on delinquent school taxes, which belong to a school district, is merely an incident of the principal, and also belongs to the district; and a city which is charged with the collection of such taxes cannot withhold interest so collected, which may be recovered by the district, although the principal may have been paid over and received by the district.

5. EQUITY PLEADING—PLEADING OUT OF TIME—DISCRETION OF COURT.
Permitting the filing of pleadings in an equity suit in a federal court after the pleadings have been regularly made up under the rules is a matter within the discretion of the chancellor, and not subject to review.

6. JUDGMENT—COLLATERAL ATTACK.
The jurisdiction of a federal court to entertain an action cannot be attacked on the ground that requisite averments as to citizenship were not made in a creditors' suit based on the judgment in such action.

7. LIMITATION OF ACTIONS—SUIT AGAINST TRUSTEE.
A city cannot plead limitations against a suit to require it to account for taxes collected in behalf of its school board, as it holds such taxes in trust, and cannot acquire rights therein by prescription.

[1] Rehearing denied February 21, 1899.

**8. CREDITORS' SUIT—RIGHT TO MAINTAIN.**

Judgment creditors of the school board of a city, whose judgments are payable from the taxes levied and collected for certain years, may maintain a creditors' suit against the city, which was charged by law with the collection of such taxes, to require an accounting as to taxes and interest alleged to have been collected for such years, and not paid over to the school board.

**9. DECREE—MODIFICATION AT SUBSEQUENT TERM — PENDENCY OF MOTION FOR REHEARING.**

A petition for rehearing in an equity suit filed and taken under advisement during the term at which the decree is entered prevents the decree from becoming final until it is disposed of, and the decree may be modified at that time, though at a subsequent term.

**10. INTEREST—WHEN RECOVERABLE—FAILURE OF TRUSTEE TO ACCOUNT.**

A city which is charged with duty of collecting school taxes, and which collects taxes and interest, and fails to pay the same over to its school board, which is entitled thereto, but uses the money in its own affairs, is chargeable with interest on the sum so retained in a creditors' suit by judgment creditors of the school board who are entitled to the fund.

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

This suit was commenced by a bill brought by Mrs. M. M. Fisher, joined and authorized by her husband, John Fisher, of Cuba, and citizens of the kingdom of Spain, against the city of New Orleans; and in said bill it was alleged that she recovered a judgment in this honorable court against the board of school directors, a corporation created by the laws of the state of Louisiana, and a citizen thereof, in the sum of more than $10,000, as more fully appears by the record of said suit; "that your oratrix obtained two other judgments against the same school board, before the civil district court for the parish of Orleans, amounting in the aggregate to many thousand dollars; that all of said judgments are now final; that they are made payable out of the school taxes levied by the city of New Orleans prior to 1879. Your oratrix avers that the school taxes out of which said judgments have been made payable is a trust fund levied by the city of New Orleans, for the purpose of paying the expenses of the public schools of the city of New Orleans. (1) That the city of New Orleans has failed to collect the said taxes punctually, and that it was through her fault and negligence that the same remains uncollected, and, by reason of her neglect, she has become liable for the amount of taxes yet remaining uncollected. (2) Your oratrix further complains and says that said taxes, under the law, carried interest at the rate of ten per cent. per annum, and that the city of New Orleans has never paid to the school board any of the interest due on said taxes, but she has misapplied and diverted the same to other, unlawful, uses. (3) Your oratrix further avers that the school board created the obligation against said school taxes, by virtue of contracts which were legally entered into, and your oratrix was protected by the constitution of the United States from any impairment of her contract; that, in violation of this constitutional right, the state of Louisiana passed Act No. 82 of 1884, which directed that the property of delinquent taxpayers should be sold for what it would bring, and that all taxes due thereon should by virtue of said sale be canceled; that, by reason of said law, the city of New Orleans allowed the property on which the school taxes were due to be sold for state taxes, and she caused the city taxes, including the school taxes, to be canceled; that she was thus guilty—First, as a delinquent trustee, for not having enforced the collection of the said tax, and, second, for having failed to protect the interest of your oratrix in said state tax sale; that the cancellations thus made amount to many thousands of dollars. (4) That the said city of New Orleans, at various times, passed ordinances canceling and annulling the said taxes, and remitting the interest thereon; that your oratrix is unable to give the exact amount of each kind of violations of her obligations by the trustee, and it is absolutely necessary to make the city of

New Orleans account for the various amounts which have been lost to your oratrix through the unfaithfulness of said trustee; that the board of school directors to whom the city of New Orleans should account have refused to demand such an account, and will continue so to do, and your oratrix would be left without a remedy; that the fund which the city of New Orleans administers seems now to be insufficient to satisfy the demands of all the creditors who are entitled to be paid out of the same. Your oratrix further avers that her judgments are made directly payable out of the school taxes levied prior to 1879, and she has an equitable lien there against, enforceable before a court of equity. She further avers that, under the law, her certificates, which are merged in her judgments, have been, under the law, received by the city of New Orleans directly in payment of the school taxes, without the intervention of the board of school directors; that, for those reasons, your oratrix brings her bill against the city of New Orleans and the board of directors of the city schools of New Orleans for an account. Your oratrix brings this bill for herself and all parties similarly situated who are willing to appear and contribute to the costs thereof, they being too num: ous to be made parties hereto. May it please your honors to grant unto your oratrix a writ of subpœna to be directed to the city of New Orleans, through its mayor, and to the school board of the city schools of New Orleans, E. B. Kruttschnitt, president, thereby commanding them and each of them, on the first Monday in June, 1896, under the penalties therein to be limited, personally to appear before this Hon. court, then and there full, true, direct, and perfect answer make to all and singular the premises, and further to stand to, abide, perform such further orders, directions, and decree that this Hon. court may make, and to give a full, fair, and perfect account of all the school taxes collected by the city of New Orleans for the years 1873, 1874, 1875. 1876, 1877, and 1878; of all the interest received thereon by said city and never accounted for; of all the taxes which were not collected for want of proper enforcement, and which have since been canceled, both sales made by the state tax collectors and by ordinance adopted by the city council. And your oratrix further prays for all general and particular relief as shall seem agreeable to equity and good conscience."

On June 1, 1896, the city of New Orleans, through its city attorney, entered its appearance. Afterwards, on August 24, 1896, a so-called "supplemental bill" was filed, wherein it was alleged: "Your oratrix avers that the city of New Orleans has at various times seized, for the taxes due for the years during which her claim arose, a number of houses and lots, and has purchased the same in satisfaction of the taxes due, and that a resulting trust has, under the law, followed the said property; and your oratrix is entitled to have the value of said real estate realized upon, and the rents accounted for by the city of New Orleans. Your oratrix is unable to give an exact statement of the houses and properties so purchased by the city of New Orleans, but she avers that the same largely exceeds thirty thousand dollars; that said city allows said property to go to waste; and your oratrix avers that she has a statutory lien on all of said property, under the laws of the United States, and that she is entitled to the appointment of a receiver to take charge of same, and realize under order of court; that the acts complained of are contrary to equity, and your oratrix has no rights save before the equitable jurisdiction of this Hon. court. Your oratrix brings this, her bill, for her own benefit, and for all other persons in her same situation. May it please your honors to grant unto your oratrix a receiver to take charge of the property purchased by the city of New Orleans for the taxes 1874 to 1879, inclusive, with such powers as receivers generally possess, and more especially to be mentioned in the order appointing him; and your oratrix further prays that this supplemental bill be filed, and that the city of New Orleans, through the mayor thereof, be ordered to show cause, on such day as this Hon. court may fix, why the prayer herein for receiver should not be granted; and your oratrix prays for general relief."

General demurrers were filed to the original and amended bills, which were afterwards overruled. On March 12, 1897, the city of New Orleans filed answer, substantially as follows: "(1) Defendant admits that oratrix recovered judgments against the board of school directors, a corporation of the state of

Louisiana, and a citizen thereof, both in this honorable court and in the civil district court for the parish of Orleans, as is set forth in oratrix's bill of complaint and records annexed thereto and referred to therein. (2) Defendant admits that all of said judgments are now final, and are payable as decreed and provided for in the said judgments. (3) Defendant denies that the school taxes out of which said judgments have been made payable is a trust fund levied by the city of New Orleans for the purpose of paying the expenses of the public schools of said city. (4) Defendant denies that it has ever failed to collect said taxes punctually; and denies that any of the same remain uncollected; and denies that, if any of the same remain uncollected, they so remain by reason of any negligence on the part of this defendant; and denies that defendant is liable at all for the amount of any such taxes yet remaining uncollected, if any such there be. (5) Defendant admits that the city of New Orleans has never paid to the school board any interest which she may have collected on any back taxes; and defendant denies that any such interest, if same has ever been collected, was due to the school board; and defendant denies that she has ever misapplied or diverted to unlawful uses any interest that she may have collected from delinquent taxpayers or back taxes; and defendant avers and shows that, by express provision of law, all interest which she may collect on any back taxes is especially set aside for certain purposes, and cannot by her be used for school purposes or for any other purpose than that commanded by law. (6) Defendant denies that the school board created the obligation against the school taxes set forth in oratrix's bill of complaint, by virtue of any contracts legally entered into, and denies that the oratrix has any right to invoke the protection of the constitution of the United States herein, and denies that the provisions of the same regarding impairment of contracts have been in any manner violated by this defendant. (7) Defendant denies that Act No. 82 of 1884 was passed in violation of any constitutional rights on oratrix in the premises; and defendant declares that whatever was done by the state of Louisiana in passing the said act, if it was done, was within the legislative authority; and the said taxes and legislative provisions were subject to change, amendment, and repeal by the same authority which created them; and defendant shows and avers that the city of New Orleans had no authority or control over the action of the legislature in the premises. (8) Defendant denies that the city of New Orleans allowed any property on which school taxes were due to be sold for said taxes, and denies that she caused the city taxes, including the school taxes, to be canceled. (9) Defendant denies that she has been or is guilty as a delinquent trustee for not having enforced the collection of said taxes; denies that she ever was a trustee in the matter; denies that she ever failed to enforce the collection of any taxes which it was her duty to enforce; denies that it ever was her duty to protect the interests, if any she had, of oratrix, at said tax sales; denies that oratrix had any such interest; and denies that there were any such tax sales. (10) Defendant denies that any cancellations, amounting to many thousands of dollars, or to any amount, were made by reason of said sales, as set forth in oratrix's bill of complaint. (11) Defendant denies that the city of New Orleans passed ordinances canceling and annulling any taxes, or remitting any interest thereon; but, if any taxes were so canceled or remitted, defendant avers the same was done by authority of law or by judgment of a competent court. Defendant denies that there was or is any obligation on the part of the city to account either to the school board or to the oratrix for any taxes, moneys, or appropriations such as are set forth in oratrix's bill of complaint. (12) Defendant denies that it was the duty of the school board to call this defendant to account, and denies that the school board or the oratrix herein has any cause of action against this defendant for such an account. Defendant denies that there was any privity between the school board and this defendant, or between Mrs. Fisher and this defendant. And, further answering, defendant says that, if any such cause of action for an accounting ever did exist in favor of said school board or of said oratrix, the same was effective and executory in the year 1880, and became actionable and exigent in the year 1880, and in the years following the year 1873 up to 1879, inclusive; that said action of accounting was personal to said school board, and could only be exercised and availed of by the said school

board, which action is prescribed by the lapse of ten years from and after each of the said years; and that oratrix has no right or cause of action in the premises. (13) Defendant denies that there is any fund now administered, or which ever was administered, by the city of New Orleans, derived either from appropriations, taxes, or money said to be due said school board, and denies that if there is or was any such fund, that the said school board or oratrix has any rights in the premises. (14) Defendant admits that the judgments of oratrix are payable as stipulated in said judgments, but denies that oratrix has any equitable lien enforceable against the city of New Orleans before a court of equity by reason thereof. (15) Defendant denies that, under the law, were the certificates, which she alleges have been merged in her judgments, ever received by the city of New Orleans directly in payment of the school taxes without the intervention of the board of school directors. (16) Defendant denies that the city of New Orleans has at various times, for the taxes due for the years during which oratrix's claim is alleged to have arisen, sold for taxes, and purchased in satisfaction thereof, a number of houses and lots; and particularly denies that any school taxes are due and payable on any such property, if any such has been bought; and denies that, if any such property has been bought, any resulting trust has, under the law, followed said property; and denies that oratrix would, in any event, be entitled to have the value of said real estate realized upon, or the rents accounted for by the city of New Orleans. (17) Defendant denies that the city of New Orleans purchased houses and properties, as charged in oratrix's supplemental bill of complaint, to the extent of $30,000, or any part thereof. (18) Defendant denies that the city has any property upon which oratrix has any statutory lien under any law of the United States; and denies that she has allowed to go to waste any property of any description which is or has been in her possession; and denies that oratrix is entitled to have a receiver appointed to take charge of any property owned or held by this defendant. (19) Defendant denies that any acts which have been done by her are contrary to equity; and defendant denies that the oratrix has any right or reason to invoke the equitable jurisdiction of this honorable court. Further answering, defendant shows that there does not appear in the bills of complaint of oratrix herein any allegation of any indebtedness by the city of New Orleans to the said school board, and that, without having made said allegation, oratrix is without right to proceed against this defendant herein. Further answering, defendant shows and avers that it has been decreed in the judgments of oratrix herein sued on, and in other suits of a similar nature, by other parties, against the city of New Orleans, that oratrix and such other complainants have no cause of action against the city of New Orleans on account of the claims of the character sued on in the judgments hereinbefore referred to."

Replication having been filed to this answer, on March 22, 1897, the court ordered a reference to a master, "to take a full, true, fair, and perfect account of all the funds, principal and interest, received by the city of New Orleans from the school taxes levied in 1871, 1873, 1874, 1875, 1876, 1877, and 1878, of all interest remitted illegally, of all properties purchased for said taxes, as more fully prayed in the bill and supplemental bill filed herein, and to that effect the parties shall produce before said master all books, papers, documents, to be examined, and which may be necessary or proper in the premises." At this stage of the proceeding, numerous interveners, claiming to have judgments against the school board in all respects similar to the judgments of Mrs. Fisher, intervened, asking to share in the proceeds of any amounts found due by the city of New Orleans on the accounting.

May 22, 1897, the master reported as follows: "(1) The city of New Orleans owes the school board, for the principal of school taxes collected and not paid over from the years 1871 to 1878, both inclusive, the amount of $23,180.03. (2) The proportion of the interest actually collected by the city of New Orleans on the taxes of the years 1871 to 1878, both inclusive, up to January 1, 1897, to which the school board will be entitled, if it is entitled to the same proportion of the interest as of the principal of said taxes, is $48,758.75. It is a question of law whether the school board is entitled to any part of the interest. I think it is. The interest, as a mere accessory of the

principal, belongs, in my opinion, to the same person to whom the principal belongs. Accordingly, in my opinion, the amount the city of New Orleans now owes to the school board for taxes collected, and for interest on the taxes collected, is, as above stated, $71,938.78. (3) Properties bought in: The complainant abandoned the attempt to show that the city owed anything on account of properties purchased for taxes. (4) Interest illegally remitted: The complainant claims that the city should be further charged with interest on the portion of the taxes accruing to the school tax fund, whether such interest was actually collected by the city or not. In view of the great length of time that has elapsed, and the almost impossibility of proving now whether the interest was collected or not, and in view of the fact that, under the assessment rolls, there always is an uncollectible amount of interest, I do not think that the city ought to be charged with the interest which she is not shown to have collected. No evidence of any kind was adduced before me on this subject. It was not shown that any part of the uncollectible interest could have been collected or was illegally remitted. I therefore find that the city is not chargeable with the calculated amount of interest not collected. By agreement of the parties, the fees of the experts herein were fixed at two hundred and fifty dollars ($250) to each of them, or five hundred dollars ($500) to the two. The bill of R. H. Carter, the stenographer, for evidence taken in this case, is $21.50. I further find that the following parties have proved their claims against the fund herein, by judgments rendered in their favor against the school board, in the civil district court for the parish of Orleans, namely: M. M. Fisher, $11,094.87; M. M. Fisher, $8,802.39; M. M. Fisher, $5,864.64; F. J. Gasquet, $57,059.69; Jose Venta, $21,297.72." This report was accompanied by two exhibits, showing the methods by which the amounts collected by the city, and due the school board, had been ascertained.

March 31, 1897, the complainant, with several interveners, filed exceptions to the master's report, as follows: "First exception: That the master failed to reserve the rights of these plaintiffs and interveners to the interest money collected by the city of New Orleans for the school fund since January, 1881. Your exceptors aver that, in the bill of complaint herein, it was averred that the city of New Orleans had remitted a large amount of interest to the taxpayers, and an attempt was made to hold the said city liable for said interest which it was averred was illegally remitted; that on an examination of the accounts, your exceptors discovered that the greatest deficit came not from the interest illegally remitted, but from a contract made by the city of New Orleans in 1881 with the civil sheriff, by virtue of which all the interest accrued on the taxes was given and allowed to the sheriff as a part consideration of his services; that the city of New Orleans had no power or right, under the constitution, to increase the compensation of any officer, and said contract was ultra vires as trustee, and not binding on the cestui que trust; that your exceptors were delayed already so long by litigation in the enforcement of their claim that they preferred that their right to further accounting should be reserved than to file a supplemental bill, with the permission of this honorable court; that, therefore, the rights of your exceptors to a further accounting on that head should have been reserved by the master, and should be so now reserved by this Hon. court. Second exception: Your exceptors aver that they found it extremely difficult, and a work of great magnitude, to arrive at the properties purchased by the city for the taxes; and, for the time being, your exceptors were not able to get at the correct description of said properties; that the officers of New Orleans are busy with the regular duties, and your exceptors did not deem 'it expedient at the present juncture to enforce their rights to an account of said properties, and their rights should be reserved. Third exception: That the master failed to allow any interest on the moneys received by the city of New Orleans from the time the same was payable; that your exceptors are entitled to interest with an annual rest, according to the rules and principles of equity and jurisprudence; but they will content themselves with simple interest, reserving their rights to a further account when found necessary."

And on June 7, 1897, the city of New Orleans filed exceptions to the report of the master, as follows: "Defendant excepts to that part of the report of the master wherein he expresses his opinion that the interest on taxes is a

mere accessory of the principal, and belongs to the person to whom the principal belongs, and that, therefore, in his opinion, the city of New Orleans owes the school board for taxes collected and interest collected. Exceptor excepts to this on the ground that, first, it was no part of the master's duty, under his reference, to decide this question, or to express any opinion upon the question of law involved therein, but in the event that the court overrules this exception, and holds that such was his duty, then and in that case the city of New Orleans excepts to his conclusions of law, and asserts that, on the contrary, his conclusion is erroneous; that the interest does not follow the taxes, and does not belong to the party to whom the taxes belong. Defendant excepts to the statement of the master that the amount reported as collected out of the school taxes from 1871 to 1878, inclusive, is due by the city to the school board or to the board of liquidation at any time since its collection."

On June 27, 1897, the city of New Orleans filed what it denominated an exception to the jurisdiction of the court ratione materia and personæ, therein averring "that plaintiff's petition contains no averment that the suit could have been maintained by the assignors of the claim sued upon by Mrs. M. M. Fisher in the suit which forms the basis of this action." And on July 1, 1897, the city of New Orleans filed an alleged plea in abatement to the same purport as the above-entitled exception. This exception and this plea were afterwards stricken from the files as irregular, and not filed in accordance with the rules. Thereafter the city of New Orleans offered in open court to file a plea further attacking the jurisdiction of the court, which leave was refused; and, finally, on January 22, 1898, the case came on for final hearing upon the bill, answer, replication, exhibits, proof, and testimony, and master's report; whereupon, February 21, 1898, the court rendered judgment in favor of the complainant and interveners (with other details not necessary to recite), as follows: "It is ordered, adjudged, and decreed that the city of New Orleans, trustee of the special school taxes levied and collected for the years 1871 to 1878, inclusive, be condemned to pay plaintiff and interveners the said taxes, received and collected by her, as follows: $71,938.78 with five per cent. interest per annum on $71,139.60 from January 24, 1881, and on $799.18 from May 11, 1896, until paid. And it is further ordered that this bill be retained for a further accounting, and such orders and decrees as may be necessary."

On April 23, 1898, the city of New Orleans filed a petition for a rehearing, on numerous grounds, which was ordered filed and fixed for hearing. Pending the rehearing, the November term, 1897, of the circuit court adjourned, and the April term, 1898, was opened, at which term the court passed upon the petition for rehearing, as follows: "Whereupon, and on consideration thereof, it is ordered that a rehearing in this cause be, and the same is hereby, refused; and the court, of its own motion, orders that the final decree rendered herein on February 21, 1898, be, and the same is hereby, amended so as to only allow interest on the amount recovered, to wit, $71,139.60, from February 21, 1898, the date of said decree, instead of from January 24, 1881, as heretofore allowed. The clerk will note this amendment on the margin of said decree."

Subsequent to the decree, and prior to the decision upon the rehearing, a plea in abatement on the ground of alienage was put in by the city of New Orleans, to the effect that M. M. Fisher, being a citizen of Spain, is unable to prosecute this suit, and the suit should be abated, because a state of war existed between the kingdom of Spain and the United States of America and all the subjects and citizens thereof. There was a demurrer to this plea of alienage on various grounds, but finally, in the opinion of the court, a sufficient answer was made thereto by proof that the complainant Fisher was not a citizen of Spain, but was a citizen of Great Britain. From the decree of the circuit court, both parties have appealed.

S. L. Gilmore, Jas. J. McLaughlin, and B. K. Miller, for city of New Orleans.

Chas. Louque, for Fisher.

Before PARDEE and McCORMICK, Circuit Judges, and BOARMAN, District Judge.

PARDEE, Circuit Judge (after stating the facts as above).   There are 14 assignments of error on the part of the city of New Orleans, many of which are argumentatively stated, but which we will consider in order, disregarding those argued in the briefs, but not specifically assigned.

The first assignment of error is as follows:

"It was error for the court to decree judgment against the city for any part of the taxes of 1871, for the reason that the evidence shows that no part of complainant's claims arose during the year 1871; and, further, that the act of the legislature which directed the city to impose a special tax of one-fourth per cent. was passed in the year 1873; therefore could not affect the taxes of 1871. Furthermore, it is error for the court to allow this decree against the city for taxes for 1871, for the reason that the complainant does not claim any share in the taxes of 1871, or any interest thereon, either in her original or supplemental bill; and it was error for the court to allow her more than she claimed. Consequently, the amount declared due out of taxes for 1871, to wit, $7,821.17, and the delinquent interest of taxes of 1871, $9,332.81, were allowed in error, and should be deducted."

The grounds stated in this assignment form no part of the exceptions filed to the master's report, and it can hardly be said that the judge below erred in this respect when his attention does not appear to have been called to it. Under article 254 of the constitution of 1879, and under Act No. 49 of 1880, the taxes due the school fund previous to 1879 constitute but one fund. Fisher v. Directors, 44 La. Ann. 184, 10 South. 494; Gasquet v. Board, 45 La. Ann. 342, 12 South. 506; Fisher v. Board, 48 La. Ann. 1077, 20 South. 163. The record shows that the complainants' judgments are made payable out of the school taxes levied by the city of New Orleans prior to 1879. The prayer of the bill is for a full account, and for general relief, and the order of reference specifies the school taxes levied in 1871, and is not complained of. The objection, if good, which we do not admit, comes too late.

The second assignment of error is as follows:

"This being a suit for an accounting, the court erred in giving judgment against the city for money that she never collected, in that the judgment includes the sum of $11,933.27, which the master's report states is a discount allowed by the city to the taxpayer for payment of school taxes; and as the bill only claims and asks that the city be compelled to pay over the actual amount of cash collected, and as this money was never collected, we submit that it was error for the court to order it paid over. This being only a suit for an accounting, judgment cannot be had in the bill for anything but money actually collected."

The question raised in this assignment does not appear to have been raised by exception to the master's report, and we fail to find in the master's report any reference to the special sum of $11,933.27 as a discount allowed by the city to taxpayers for the payment of school taxes. The act of 1874 (No. 41, page 78), which provided for rebates or discount on taxes paid in full prior to the 20th of March in each year, expressly provided that no discount should be made upon school taxes. The matter herein urged is probably one of the details embraced in the special accountant's report upon which the master's report was made up. We are not disposed to follow the question through the exhibits, even if counsel should point the way. The assignment of error is not well taken.

The third assignment of error, as follows:

"The evidence shows that the full amount of money collected for 1874 school taxes was turned over to the school board (see testimony of Clark Steen, and his report, offered in evidence by complainant); and, such being the case, it is urged that it was error for the court to make the city pay over any more money out of the taxes of 1874, the city having already paid over all that she owes on that year. Such being the case, the amount of $10,816.59 and $209.50, proportion of interest on school taxes for 1873, and the proper proportion of principal for school taxes for 1874 (to ascertain the amount of which a re-reference to the master is necessary), are not due to the school board. While it is true that all back taxes prior to 1879 are lumped into one fund, we urge that, in calling for an accounting, it is sufficient for the city to show, in order to be discharged as far as the taxes of any particular year are concerned, that she has paid over the full amount of taxes due the school board for that year; and, having done this with the taxes for 1874, it is error for the court to order her to turn over any more of the taxes for that year."

—Raises more matter involved in the master's report of which no complaint was made in the exceptions filed to the report, and the assignment need only be noticed because it contains an admission that all the back taxes prior to 1879 were lumped into one fund.

The fourth assignment of error raises the question of the complainants' remedy at law. A general demurrer was filed to the bill, and the same was overruled, and no assignment of error covers the same, unless this fourth assignment be so considered. The counsel for the city of New Orleans say, in support of this assignment: "A reading of the judgment [which is found in the transcript] will show your honors that it is of such a nature that, by garnishment proceedings, she could have obtained all needed relief under that judgment, and that that was all that was required and necessary to collect anything due her by the city, or anything due the school board by the city. Consequently, as she has an adequate remedy at law, it is wrong to permit her to proceed in equity." On the other side, it is said: "Solicitors for complainants have been litigating during these ten years, and the only relief to be had is through the equity court." We consider the bill as a creditors' bill to reach equities existing between the school board of the city of New Orleans and the city of New Orleans, in which an accounting between the two parties is necessary, in order to ascertain the indebtedness of the city to the city school board. No such relief can be obtained at law.

The fifth assignment of error is to the effect that complainant has no right to sue the city of New Orleans, because her judgments are against the school board only, and she does not allege that the city owes the school board anything. We think the issue of indebtedness of the city of New Orleans to the school board is sufficiently asserted in the bills, and is clearly put at issue in the answer.

The sixth assignment of error is as follows:

"The evidence shows that in suit No. 12,060 the city was garnished on July 12, 1894, under a fi. fa., and answered under oath that she had one thousand eight hundred and ninety-three 9/100 dollars to the credit of the school fund prior to 1879 on that date; and, having paid that amount over to Mrs. Fisher under her judgment, it was error for the court not to hold that said payment to and acceptance by Mrs. Fisher, complainant herein, estopped her from traversing said garnishment, as she is doing by this proceeding; and the court should have held such payment and acceptance as an estoppel and res judicata concerning all collections made up to July 12, 1894."

The proposition enunciated in this assignment of error is that an issuance of execution and garnishment proceedings thereunder operate an estoppel to a creditors' bill founded on the same judgment, and seeking an accounting between the judgment debtor and the garnishee. If the general proposition should be conceded, its applicability in the present case is not apparent. In our view, the garnishment proceedings shown in this record were against the treasurer of the city and ex officio treasurer of the school board,—a stakeholder,—under which, at law, no accounting as between the city of New Orleans and the school board could have been had.

The seventh assignment of error is thus stated:

"The court erred in approving the finding of the master that the interest or penalty on delinquent taxes formed a part of the taxes, and should be turned over to the board. But, even though this was correct (which course is not admitted), we hold that the court erred in ordering the city to pay over the penalty on the taxes which she had already paid over. In any event, she should not be compelled to pay over the penalty on any taxes, except on those taxes which are still in her possession. In other words, the master's report shows $23,108.03 of principal; and we submit that only the penalties on this $23,108.03 should be turned over, and not the penalties on the taxes that were turned over to the board years ago."

This assignment refers to the finding of the master's report holding the city liable for interest collected upon back school taxes. The master said: "It is a question of law whether the school board is entitled to any part of the interest. I think it is. The interest, as a mere accessory of the principal, belongs to the same person to whom the principal belongs." Under the law, the school taxes carried 10 per cent. interest per annum the day they became delinquent. It was a penalty for nonpayment of the taxes. This interest, or penalty, for delayed payment of school taxes, formed no part of the city's proper revenues. The city in collecting the same was acting as a trustee for the school board. Delay in payment of taxes operated to the prejudice, not of the city, but of the school fund and its creditors. We are unable to find any authority in law or morals for the city to appropriate to itself this interest. To allow such an appropriation would be to reward the city for its own negligence in the collection of the taxes due the school fund. We fully agree with the master that "the interest, as a mere accessory of the principal, belongs to the same person to whom the principal belongs." The assignment argumentatively claims that if the city is liable for the interest on taxes collected, which taxes have not been paid over, it is not liable for interest on taxes which it (the city) had collected, and, when paying over the taxes, had withheld. We are unable to see any difference in principle between the two cases.

The eighth assignment of error complains of the action of the court below in striking from the records two certain documents, called pleas to the jurisdiction ratione materia et personæ, which were filed irregularly after the case had been put at issue, and after the master's report and exceptions had been filed thereto. The certificate of counsel is not attached to these documents, and they had no proper place in the files of the court. At the same time, it is to be noticed that the right to file pleadings after the pleadings

have been regularly made under the rules is a matter within the discretion of the chancellor, and not subject to review. Another serious objection to these alleged pleas is that, in so far as they attack the jurisdiction of the court in the original suit in the circuit court in which Mrs. Fisher recovered a judgment against the city school board, and which is the b--is of this creditors' bill, it seems clear to us that the pleas are o_,ectionable. Mattingly v. Nye, 8 Wall. 370.

The ninth assignment of error does not appear to be based on any affirmative ruling of the court below. It appears that leave was asked to file a plea to the jurisdiction, and an order to show cause issued, but no ruling made in the premises.

The tenth assignment is to the effect that it was error not to have allowed the plea of prescription made in the answer of the defendant; for, as it is claimed, the cause of action arose in 1873 and subsequent years, the last year being 1879, and the same was prescribed by 10 years.

In the case of Gasquet v. Board, 45 La. Ann. 342, 12 South. 506, the supreme court of Louisiana, in passing on a plea of prescription in favor of the school board, said:

"We think the pleas of prescription are not well founded. Act 36 of 1873 makes it very clear that the claims evidenced by these certificates were not payable absolutely or at any particular time. They are payable only out of the revenues for the years for which they are issued, and only when said revenues are collected, and in the manner therein provided; and the act further declared that 'no writ of fi. fa. or mandamus shall lie for seizure of any school moneys, or to direct or enforce its paying out otherwise than in the manner and sequence required in this act.' This law formed a part of the contracts out of which the claims arose, and deprived the claimants of any legal remedy to enforce payment except out of particular revenues when actually collected and covered into the treasury. The case is very much stronger and clearer than that of King Iron Bridge & Manufacturing Co. v. Otoe Co., 124 U. S. 459, 8 Sup. Ct. 582, in which the supreme court of the United States held that county warrants, payable only when there are funds in the treasury applicable thereto, are not actionable until the money for its payment is collected, and therefore not subject to the statute of limitations, except from the same time."

The principles here declared are in many respects applicable to the case in hand. The judgments sought to be enforced in this case were rendered since 1890, and the school certificates sued on are in judgments, and this suit is brought within 10 years from the rendition of the judgments. The position of the city being that of trustee, her possession of the funds in question is not as owner, and prescription does not, as a general proposition, run in favor of the trustee as long as the trust relation continues. In equity, the trustee should never be allowed to acquire trust funds by limitation. Daniell, Ch. Pl. & Prac. 642; Oliver v. Piatt, 3 How. 411.

The eleventh assignment seeks to raise again the question of jurisdiction of the circuit court in the original action, in which Mrs. Fisher obtained a judgment, and needs no further consideration.

The twelfth assignment is that the court erred in holding the school taxes to be a trust fund in the hands of the city. The city was collecting the school taxes for the school board, and therein acting as agent, and a trust naturally resulted.

The thirteenth assignment of error denies the right of the complainants to claim an accounting from the city of New Orleans. This objection goes to the right of the complainants to maintain this suit for an accounting, which to us seems so plain that no argument is needed to sustain it.

The fourteenth and last assignment of error is as follows:

"It was error to order the whole fund ascertained by the master to be paid over to complainant and interveners in this suit, because, if said fund is a trust fund, it is held for the benefit of all interested in said fund, and the only part that should be paid to complainant and interveners is their proportion of same; in other words, it was error for the court to ignore the rights of other certificate holders, not party to this suit, and who were not notified by publication or cited herein; and, to ascertain what proportion of the fund should go to the complainant and interveners herein, a re-reference to the master is necessary."

To this, all that is necessary to answer is that the suit is one brought for the benefit of complainants and others similarly situated. Numerous complainants who desire to participate in the expenses of suit have already intervened, and, if there are others who desire to come in before the final distribution of any funds realized, the circuit court will be open to them.

John Fisher, natural tutor, etc., and others, complainants in the court below, assign as error on their cross appeal—First, that, a new trial having been refused after the term in which decree was rendered, the circuit court was without jurisdiction, under equity rule No. 88 and other equity rules governing the practice of the court, to amend its decree; second, that under the equity jurisprudence, as well as under the Louisiana law, complainant and interveners were entitled to a decree carrying interest as was allowed by the original decree.

The record shows that after the decree entered at the November term, and during that term, a petition for rehearing was filed, submitted, and taken under advisement; that, pending decision of the matter, the November term of the court was adjourned, and the following April term commenced. As we understand the practice, the application for rehearing submitted and taken under advisement hindered the decree of the court as entered from becoming final, by the adjournment of the court; and it was competent for the judge, at the following term of court, to grant a full rehearing, or otherwise modify his decree. Goddard v. Ordway, 101 U. S. 745.

Whether interest should be allowed upon the amounts decreed against the city, as directed in the original decree, presents a more important question. The master found that the school taxes and interest on school taxes collected by the city of New Orleans for the years prior to 1879, and not paid over to the school board, and now owing, amounted to the sum of $71,938.78; and of this sum the lower court gave originally a decree with 5 per cent. interest on $71,139.60 from January 24, 1881, and on $799.18 from May 11, 1896, until paid. The master's report is silent as to the dates on which the city of New Orleans had collected the several sums found due and owing by it to the school board; but the exhibits filed with the report show that all of the sum of $71,139.60 was collected by the city prior

to January 24, 1881, and the sum of $799.18 prior to May 8, 1897. It is not disputed that the amounts collected by the city as interest on delinquent school taxes have been used and appropriated by the city in its own affairs. The general rule in equity is that a trustee who employs trust funds to his own advantage shall be charged interest.

The Revised Civil Code of Louisiana (section 3015) is as follows:

"The attorney is answerable for the interest of any sum of money he has employed to his own use, from the time he has so employed it; and for that of any sum remaining in his hands from the day he becomes a defaulter by delaying to pay it over."

It thus appears that, by general equity principles and by the Louisiana Civil Code, the city of New Orleans, as trustee, should be charged with interest. If the case is one showing that the city of New Orleans was a gross delinquent and an unfaithful trustee, equity would further require that compound interest should be allowed upon all sums collected and retained by it, with six-month rests. The interest claimed by the exception filed to the master's report, and allowed in the original decree, and now claimed upon appeal, is 5 per cent.,—the legal rate of interest fixed in Louisiana on all debts from the time they become due, unless otherwise stipulated. The decree appealed from, as amended by the judge ex proprio motu when the petition for rehearing was refused, allows no interest prior to the date of the decree. The amendment appears to have been suggested by the master's report, to the effect that, at the date thereof, the city then owed the school board, for taxes collected and for interest on taxes collected, $71,938.78. An inspection of the report and the exhibits shows, however, that the moneys so found due have been for a long time in the hands of the city of New Orleans. That the master's report allowed no interest on these sums so held by the city was a specific ground of exception on the part of complainants to e master's report, and exceptors said "that your exceptors are entitled to interest with an annual rest, according to the rules and principles of equity and jurisprudence; but they will content themselves with simple interest, reserving their rights to a further account when found necessary." Under all the circumstances, as shown by the record, we are of opinion that an allowance of 5 per cent. interest on the amounts collected by the city prior to January 24, 1881, and held and employed in the city's affairs since that date, would be just and equitable, and that the decree as originally rendered by the circuit court was correct, except as to interest on the sum of $799.18, which was only allowable from May 9, 1897, instead of from May 11, 1896.

The decree appealed from is amended so as to allow 5 per cent. interest on the sum of $71,131.60 from January 24, 1881, and on the sum of $799.18 from May 8, 1897; and, as amended, the said decree is affirmed, with costs against the city of New Orleans.