[Civil No. 1149. Filed March 27, 1911.]

[114 Pac. 964.]

WILLIAM A. PAINE, HERBERT I. PORTER, THOMAS S. DEE and LEONARD D. DRAPER, Copartners Doing Business Under the Name and Style of PAINE WEBBER & COMPANY, Plaintiffs and Appellants, v. COPPER BELLE MINING COMPANY OF ARIZONA, a Corporation, Defendant, and JAMES B. RILEY, Intervener and Appellee.

1. NEW TRIAL—MOTION—TIME FOR MAKING—DISCRETION OF COURT.— Notwithstanding Civil Code of 1901, paragraph 1478, requiring motions for new trials, etc., or to set aside a judgment, to be made within five days after verdict or judgment, if the term of court shall continue so long, and if not, then before the end of the term, the court has discretionary power to entertain a motion to set aside its judgment and grant a new trial at any time during the term, and such power is not lost by lapse of the term, where the motion was entertained by the court and continued over the term.

2. SAME—SAME—PARTIES.—Jurisdiction to entertain a motion to set aside a judgment and grant a new trial was not lost because the motion was made by one not a party to the action, he having an interest in the subject matter of the suit.

3. SAME—INTERVENTION—TIME.—Under Civil Code of 1901, paragraph 1278, providing that any person having an interest in the subject matter of the suit which can be affected by the judgment may, on leave of court, intervene at any time before trial, leave to intervene may be granted in the exercise of sound discretion after the trial commences, but it is not a matter of right.

4. SAME—SAME—NEW TRIAL.—Where a judgment is vacated and a new trial ordered, applications to intervene are to be determined by the same rules as if no judgment had been theretofore rendered.

5. CORPORATIONS—DISPOSITION OF TREASURY STOCK—CONSTRUCTION OF CONTRACT — "ADVANCE."—Stockholders of a mining corporation, which, though supposed to own valuable properties, was in financial trouble and had been declared bankrupt, entered into an agreement with one M., another stockholder, whereby M. was to provide sufficient money to discharge all corporate debts and to enable the company to operate its mines, as soon as the corporation should ratify the agreement, which further provided that the corporation should issue to M. treasury shares equal to fifty per cent of the authorized capital stock in consideration of the "advance" by him of the money specified, etc. Thereafter, the corporation was succeeded in interest by another company. *Held*, in view of the evidence as to the cir-cumstances and the construction placed by the parties on the contract, the word "advance" could not be construed as meaning "loan," but that the agreement was to be regarded as one for the purchase of the stock by M. in consideration of the advance, in the expectation that the stock of all concerned would thereby be made valuable.

6. WORDS AND PHRASES — "ADVANCE" — "ADVANCEMENT."—The word "advance" is defined by Webster as "a furnishing of something be-fore an equivalent is received, or on loan. In case of an 'advance' as distinguished from an 'advancement,' there arises the relation of debtor and creditor, or else the advance is in the nature of an abso-lute gift."

7. CONTRACTS—CONSTRUCTION.—Where one takes an agreement prepared by another and on its faith incurs obligations, he should have it con-strued favorably to himself.

8. SAME—SAME.—When an instrument is susceptible of two construc-tions, the one working injustice, and the other consistent with the right of the case, the latter should prevail.

APPEAL from a judgment of the District Court of the First Judicial District, in and for Pima County. John H. Campbell, Judge. Affirmed.

The facts are stated in the opinion.

Kibbey, Bennett & Bennett, for Appellants.

John B. Wright, for Appellee.

LEWIS, J.—This is an action by the plaintiffs and appel-lants, copartners as Paine, Webber & Co., against the defend-ant, the Copper Belle Mining Company of Arizona, for the recovery of $265,416.72 and interest, upon a promissory note alleged to have been executed and delivered to Duparquet,

Huot & Moneuse Company and transferred to the plaintiffs. The defendant failed to answer below and is not represented in this court. Prior to the entry of the default of the defendant, one James B. Riley, as a stockholder, filed a petition in intervention, asking leave to defend on behalf of the defendant corporation, which petition was denied. The default of the defendant was thereupon entered, and judgment granted the plaintiffs as against the defendant in the amount prayed for. Thirty days thereafter, but during the term, said Riley moved the court to set aside and vacate the judgment theretofore rendered, and allow him to intervene and defend on behalf of the defendant corporation, and to rehear his motion for intervention, and to grant a new trial. He submitted as a part of his motion a proposed plea in intervention, answer, and affidavits, setting up facts tending to excuse the delay in the presentation of a sufficient petition in intervention, showing want of consideration for the note, fraud in the securing of the note, and additional matters which, if presented in due time, would have justified the trial court in allowing intervention. The minute entries disclose that the hearing of this motion was continued from time to time and finally over the term. At the succeeding term of the court, an order was entered, granting said motion and ordering that the judgment theretofore entered be vacated, and that the intervener be granted leave to file a petition in intervention, Thereafter the cause was tried upon the complaint and answer in intervention, and judgment was rendered that the plaintiffs take nothing by their action. From the judgment and the order denying a motion for new trial, this appeal is taken.

The appellants contend that the trial court erred in setting aside the judgment and ordering a new trial when no motion therefor was made within the five days after the entry of the judgment, as required by Revised Statutes of 1901, paragraph 1478. The trial court had complete power over its judgment during the term, no appeal having been perfected. *Spicer* v. *Simms,* 6 Ariz. 347, 57 Pac. 610; *Svea Ins. Co.* v. *McFarland,* 7 Ariz. 131, 60 Pac. 936. It had discretionary power to entertain a motion to set aside and vacate its judgment, and to grant a new trial, at any time during the term. *Spicer* v. *Simms, supra.* This discretionary power was not lost by the

lapse of the term, where the record discloses that the motion was entertained by the court and was continued over the term. *Goddard* v. *Ordway,* 101 U. S. 745, 25 L. Ed. 1040; *City of New Orleans* v. *Fisher,* 91 Fed. 574, 585, 34 C. C. A. 15; *Watson* v. *Le Grand Roller Skating Rink Co.,* 177 Ill. 203, 52 N. E. 317; Black on Judgments, secs. 306, 310. Nor was the jurisdiction of the court to grant the motion lost because the motion was made by one not a party to the action; he having, nevertheless, an interest in the subject matter of the suit affected by the judgment. *O'Keefe* v. *Foster,* 5 Wyo. 343, 40 Pac. 525. The case of *National Metal Co.* v. *Greene Consolidated Copper Co.,* 9 Ariz. 192, 80 Pac. 397, is distinguished in this essential feature, that the motion there considered by this court was one filed at a subsequent term.

The appellants further complain that the court erred in permitting the intervention of Riley after final judgment had been rendered in the case, as the statute only permits such intervention before judgment. The right to intervene under paragraph 1278, Revised Statutes of 1901, is limited to any time before the trial. Prior to the trial the court must hear and determine an application in intervention. Subsequent to the commencement of the trial, leave to intervene may be granted in the exercise of sound discretion, but is not a matter of right. We have held that it is within the power of the trial court to set aside a judgment rendered during the term, or at a subsequent term to which its jurisdiction has been extended by the continuance of a motion therefor. Upon the judgment being vacated and a new trial ordered, applications to intervene are to be determined by the same rules as if no judgment had been theretofore rendered. The sufficiency of the petition in intervention not being questioned, there was no error in the trial court, in the exercise of its inherent power, vacating its former judgment and granting a new trial, and thereupon considering and permitting the intervention of Riley.

The appellants complain that the trial court found by its judgment that no consideration existed for the execution of the note sued upon. It is conceded by the parties to this appeal that the consideration for the note is to be found, if at all, in the furnishing of money for the use of the Copper Belle Mining Company of West Virginia, the predecessor in interest

of the defendant corporation, and for the defendant corporation, under a certain contract entered into between stockholders of the company. The question is thus stated by the appellants: ''The real controversy and difference between the plaintiffs and the intervener is whether this contract, construed in the light of all the surrounding facts and circumstances existing at the time it was entered into, created the relation of debtor and creditor between the Copper Belle Mining Company and Mr. Moneuse for the money 'provided,' 'supplied,' and 'advanced,' or whether the money so 'advanced, provided, and supplied' was the purchase price of the stock issued to him.''

The contract to be interpreted is long; its recitals are thus summarized by appellants: ''That at the time the contract was entered into the corporation owned or had owned some mining property in Arizona, believed to be valuable, if properly managed and worked. That its capital stock was divided into 200,000 shares of the par value of $5 per share; that the majority of this stock stood on the books of the company in the names of Riley, Crawford, and the Brunners, the first and second parties to the contract, and that the legality of the issue of at least 85,000 shares of this stock to them was then being investigated in the supreme court of the state of New York; that Riley, Crawford, and the Brunners owned or had standing in their names a large majority of the stock of the corporation, and had been in the absolute control of the corporation; that under their administration the company had contracted debts exceeding $45,000, besides mortgages to Gleason and Costello of $85,000, and the company had been declared bankrupt by the district court of Cochise county; its property was taken from it and was in the hands of the trustee in bankruptcy and was about to be sold at auction and the proceeds distributed to its creditors.''

''In this situation,'' say the appellants, ''the evidence shows the stock of these majority stockholders, whether honestly or dishonestly acquired, was worthless, and not worth further litigation over. Moneuse was a small stockholder, holding only 1,000 shares; but he had money and had faith in the value of the company's property, if it could be redeemed and properly managed, and by the contract in evidence he agreed that, if these majority stockholders would turn over to him

by means of surrender to the company and reissue to him so much of their holdings of stock as would amount to fifty per cent of the stock of the company, and place him in the complete control of the company by the election of directors and officers of his choice, he would 'advance' (loan) to the company sufficient money to pay its debts, restore its property to it, and pay its operating expenses for three years, believing that in that time he could place it on a paying basis.''

The essential provisions of the contract follow: "First: The party of the third part shall provide and supply, on or before the twentieth day of June, 1903, a sufficient sum of money to pay off and discharge all of the just debts due or owing by the said company and in addition thereto, as required from time to time, sufficient funds to enable the said company to work and operate the claims and mines which have been heretofore operated by it, and agrees to apply the said moneys to the payment and discharge of the said debts, and for a period not exceeding three years, to the working and operation of the said claims, until the said claims shall yield sufficient returns to pay for working and operating the same; procuring said bankruptcy and other legal proceedings against said company to be dismissed and terminated and said company to be restored to the title and possession of its property, free and clear except as to alleged mortgages made to Gleason and Costello, now in litigation; said funds to be so applied as soon as all the terms and conditions of this agreement shall have been fully carried out, and complied with by the parties of the first and second parts, and the actions of the parties of the first and second parts in carrying out and complying with the same shall have been in all respects, as far as necessary for the purposes hereof, ratified, confirmed and adopted as and for the act of the said Copper Belle Mining Company, by the directors and stockholders thereof. . . .

"Sixth: It is further agreed by all the parties hereto that the said company shall issue and deliver to the party of the third part, the treasury shares of the capital stock of the said company which shall be equal to fifty (50 per cent) per cent of the total authorized capital stock of the said company, provided for in the fourth clause hereof, less the amount of the holding of the party of the third part, in consideration of the advance, by the party of the third part, of the moneys

which are to be paid and advanced by him, as above provided for, and without further consideration whatsoever."

"Tenth: It is further agreed by all the parties hereto that such resolutions as may be necessary or proper to carry out and have performed on the part of the parties hereto, or on the part of the said Copper Belle Mining Company, the terms and provisions of this agreement, and all of them, to the true intent and purpose thereof, shall be submitted to and adopted by the new board of directors, and by the stockholders of the said company, at meetings of the said board of directors and stockholders to be forthwith called for that purpose, and each of the parties hereto hereby covenants and agrees that he will give his best effort, aid and endeavor, and his votes, to procure the adoption of the said resolution."

The interpretation of the contract is not without difficulty. Webster defines the noun "advance" as a "furnishing of something before an equivalent is received, or on loan. In the case of an 'advance' as distinguished from an 'advancement,' there arises the relation of debtor and creditor, or else the advance is in the nature of an absolute gift." See, also, Universal Dictionary; Black's Law Dictionary. That "advance" has no such certain meaning as would enable the court to determine the sense in which it was used by the parties to the contract, without examining the contract as an entirety and perhaps seeking the aid of the surrounding circumstances and the practical construction of the contract by the parties, is shown by the varied meanings given to the word in *Henderson* v. *Ries,* 108 Fed. 709, 47 C. C. A. 625; *Morrow* v. *Turney,* 35 Ala. 131, *Nolan* v. *Bolton,* 25 Ga. 352, *Windsor Bargain House* v. *Watson,* 148 N. C. 295, 62 S. E. 305, *Carpenter* v. *Plagge,* 192 Ill. 82, 61 N. E. 530, *Fisher* v. *Parr,* 92 Md. 245, 48 Atl. 621, *State* v. *Rice,* 43 S. C. 200, 20 S. E. 986, and *Kinney* v. *Hynds,* 7 Wyo. 22, 49 Pac. 403, 52 Pac. 1081. In determining its meaning as used in this contract, it is significant to note that the contract is between stockholders of a corporation, that the corporation is not a party thereto, although it is contemplated that its assent would be later obtained, and that the resolution assenting to the contract is not before us, notwithstanding counsel have stipulated that the record contains all minutes essential to a determination of the case. The obligation is now sought to be enforced against the

Arizona corporation, the successor in interest of the West Virginia corporation. Regarding the Arizona company as identical in interest, it is entitled in the interpretation of this contract to the benefit of the principle that, where a party takes an agreement prepared by another and upon its faith incurs obligations, he should have it construed favorably to himself. *Noonan* v. *Bradley,* 76 U. S. 394, 19 L. Ed. 757; *Garrison* v. *United States,* 7 Wall. 688, 19 L. Ed. 277. Nor do we think the rule less pertinent because the intervener was a party to the preparation of the contract. He is here defending in the right of the corporation and for its benefit.

Another principle made use of in the Noonan case, *supra,* is likewise applicable: That, "when an instrument is susceptible of two constructions, the one working injustice and the other consistent with the right of the case, that one should be favored which standeth with the right."

The construction asked for by the appellant means that the parties to the contract contemplated the giving to Mr. Moneuse the majority of the stock of a corporation owning a property "of great value, and which should yield large profits," conditioned that he loan the company money to pay off debts approximating $50,000, and during the succeeding three years such further funds to place the property on a paying basis as he saw fit, at the end of which time, in the event the corporation did not repay the loan, the entire property was to be subject to the legal enforcement of the debt. The construction contended for by appellees means the giving of the majority of the stock of the corporation to Mr. Moneuse in consideration of the furnishing of such moneys, in the expectation that the stock of all concerned would thereby be made permanently valuable. There is no question but that the first construction would place the corporation at the mercy of Mr. Moneuse, resulting in injustice; the second to justice.

The argument of appellants that it is not unusual to place no exact limit upon the amount of future advances or loans to be made, because repayment being stipulated for or contemplated, the amount advanced, within reasonable limits, is not material, but it is unthinkable that a purchase of property should be made and the purchase price remain an unascertained amount, does not carry conviction. As applied to ordinary business transactions in properties, the values of which

are ascertainable and stable, there is much force in the con-
tention. Here, however, the entire enterprise was speculative.
The value of the mine, believed to be large, was unknown and
unknowable. The rewards of a successful venture might be
enormous. The amount of the advances immediately to be
made, though in fact large, were to the supposed value rela-
tively small. The future expenditures were dependent, not
upon the demands of others, but wholly upon the will of Mr.
Moneuse, by virtue of his absolute control of the corporation,
the obtaining of which was required by him as a condition
to any advance. The fact that he subsequently evidenced his
faith by the large sums of money expended speaks loudly of
his confidence in the property and his willingness to speculate
on a fortunate outcome. Viewed as a contract dealing with
a speculative venture, its terms construed as a stock purchase
evidence no folly upon his part, nor are they inequitable or
unusual.

The appellants lay much stress upon a resolution of the
stockholders adopted in February, 1904, wherein the thanks
of the company were extended to Mr. Moneuse for his liber-
ality in making the loan necessary to secure the discharge in
bankruptcy. It appears, however, that at the same meeting
a resolution dealing with the subject of the transfer of the
property of the West Virginia corporation to the Arizona
corporation was introduced, which contained a recitation of
the same loan, and provided that the property should be trans-
ferred to the Arizona corporation, upon condition that "the
said Copper Belle Mining Company of Arizona shall assume
and discharge the indebtedness of that company to Elie J.
Moneuse, which is above referred to." To the part of the
resolution relative to the loan and the refund of the money
advanced to Mr. Moneuse, protest was entered, but the resolu-
tion carried. Subsequently, and at the next annual stock-
holders' meeting, that portion of the resolution making use
of the word "loan" and subjecting the Arizona company to
the payment of it was expressly rescinded; the recitation be-
ing that "it is deemed expedient, . . . owing to a misunder-
standing on the part of some of the stockholders, that" those
portions be withdrawn and rescinded. In the light of this
action with respect to the conditions under which the property
was to pass from the West Virginia company to the Arizona

corporation, the general resolution of thanks for the loan passed prior thereto, though itself unrescinded, can have but little weight as a practical construction of the contract favorable to appellants. Mr. Moneuse's explanation of his consent to the rescission of that portion of the resolution claimed to be a practical construction of the contract is that it was done at his own suggestion, because certain stockholders pointed out that they felt that he should not claim any moneys advanced to the company until the expiration of the three years called for by the contract referred to, and that it would, in their opinion, unfairly place the new company at his mercy, if the conveyance from the old company to the new company should be made upon the basis of the recognition of a debt then immediately enforceable. He says he told these gentlemen that as he meant to live up to his contract he was perfectly content, in order to show them that he was acting in entire good faith, not to press the claim until the three-year period had expired, and he therefore caused the rescission of the resolution. He further says that so far as he was aware, until the suit was commenced, there was no suggestion that his advances were not loans.

We find great difficulty in reconciling this explanation with other portions of Mr. Moneuse's deposition. In exhibit "A" attached to the deposition is his statement as treasurer for the year ending April, 1905, wherein appears the item, "By allowance made by E. J. Moneuse, for transferring to him 99,002 shares of the stock of the Copper Belle Mining Co. of Arizona, $40,000." Of this item Mr. Moneuse has the following explanation: "This . . . allowance of $40,000 which appears upon exhibit 'A,' and which I made because it was urged by the minority stockholders that I ought to take the majority stock transferred to me at some substantial figure, and to that extent ought not to consider the sums paid by me as advances and loans to the company. It was thereupon agreed that I should call this sum $40,000. I therefore made this credit for this reason, and all stockholders were content that the sum of $40,000 should be regarded as paid for the stock, and that the rest of the sums paid by me should be treated as advances and loans. This was an oral agreement made between me and the rest of the stockholders after I extricated the company from bankruptcy. This concession

was made by me for the sake of harmony and peace for the future welfare of the company.''

It would seem that it could be hardly possible that he conceded to the stockholders $40,000 of such advances as a purchase price of stock without being in some way informed that there was a contention as to whether any part of the advances were loans. If he knew that such contention existed, it is significant that during all the years following, advancing, as he did, large sums from time to time, there is no subsequent reference in the minutes of the stockholders' meetings of either the West Virginia or Arizona corporation, nor in the motions adopting the various treasurer's reports, acknowledging the advances as loans.

The construction of the contract by the trial court, declining to give to the word "advance" the meaning of "loan," was correct. The judgment of the trial court is affirmed.

KENT, C. J., and DOAN and DOE, JJ., concur.